ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

ABRAHAM FINE (CABN 292647)
CYNTHIA FREY (DCBN 475889)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7077
    Abraham.fine@usdoj.gov
    Cynthia.frey@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>JOSEPH HUFFAKER,<br><br>    Defendant. | CASE NO. 3:21-CR-00374-MMC<br><br>**UNITED STATES' MOTION IN LIMINE NO. 1 RE ADMISSION OF DEFENDANT'S PROFFER FOR IMEACHMENT OR IN REBUTTAL CASE** |

**INTRODUCTION**

On February 1, 2022, Defendant, Joseph Huffaker ("Defendant"), sat for a proffer interview with the Government. Among other statements, Defendant admitted in that interview that he and co-defendant Brendon Tatum agreed to extort drivers under color of official right for marijuana in December of 2017, that they committed multiple such extortions, that Defendant expected to receive money from these extortions, and that he knew his acts were criminal. Before the interview, the parties signed the Government's standard proffer agreement, which provides that the Government may use statements made by the Defendant during the proffer for any purpose if Defendant testifies at trial *or* to rebut any evidence offered, or factual assertions made, by or on behalf of Defendant at any stage of a criminal prosecution (including trial). Shortly after the proffer interview, Defendant substituted attorneys and indicated his desire to go to trial.

The Ninth Circuit and courts from around the country have consistently held that statements a defendant makes during a proffer session are admissible at trial if the defendant signed the standard proffer agreement and then presents a defense inconsistent with those proffer statements. Here, Defendant signed the standard proffer agreement and then made incriminating statements during the proffer session. Accordingly, should the defense present argument or testimony that is inconsistent with Defendant's proffer statements, the government should be permitted to impeach Defendant with those proffer statements and also present evidence of Defendant's statements via rebuttal witnesses who were present at the proffer session.

**BACKGROUND**

**I.  Charges Against Defendants Huffaker and Tatum**

    **A.  Conspiracy to Commit Extortion Under Color of Official Right**

Defendant and his co-conspirator, Brendan Jacy Tatum ("Tatum"), were originally charged by Complaint in March 2021 and then by Indictment, filed on September 21, 2021, with Conspiracy to Commit Extortion Under Color of Official Right, in violation of 18 U.S.C. § 1951, such that the two, agents of the City of Rohnert Park's Department of Public Safety ("RPDPS"), knowingly conspired between at least on or about December 5, 2017 and December 18, 2017, to obstruct, delay, and affect in any way and degree commerce and the movement of articles and commodities in commerce by

extortion, by obtaining property from victims and others, with consent induced under color of official right.  Specifically, the evidence at trial will show that Defendant and Tatum conspired in December 2017 to pull over drivers suspected of possessing large amounts of marijuana, told those drivers that Defendant and Tatum were federal agents – specifically  agents the from Federal Bureau of Alcohol, Tobacco & Firearms ("ATF"), seized their marijuana, and sold the marijuana.

Among other charges, Tatum pled guilty to the conspiracy with the Defendant to Commit Extortion Under Color of Official Right alleged in Count One of the Indictment in December 2021 and is expected to be a witness for the government at trial.  Defendant remains charged with this same conspiracy in Count One of the Superseding Indictment, filed on December 13, 2022.

### B.     Extortion Under Color of Official Right

By Indictment and subsequent Superseding Indictment, filed on December 13, 2022, Defendant is also charged with two counts of extortion under color of official right in Counts Two and Three, relating to events occurring on December 5 and 18, 2017.  The evidence presented at trial will show that on December 5, 2017, Defendant and another unknown officer pulled over victim E.F., told E.F. that they were ATF agents, and extorted approximately three pounds of marijuana from him.  The evidence presented at trial will further show that on December 18, 2017, Defendant and Tatum pulled over victim B.L., told B.L. that they were ATF agents, and extorted approximately 23 pounds of marijuana from him.  Tatum was also charged in and pled guilty to Count Three of the Indictment relating to the events on December 18, 2017.

### C.     Falsifying Records in a Federal Investigation

Originally in the Complaint and Indictment (Count Four) only Tatum was charged with knowingly falsifying records, in violation of 18 U.S.C. § 1519, in February 2018 with the intent to impede, obstruct, and influence the investigation and proper administration of an investigation into the lawfulness of a RPDPS patrol stop and seizure on December 5, 2017, a matter that Tatum knew and contemplated was within the jurisdiction of Federal Bureau of Investigation ("FBI"), a department and agency of the United States.  In December 2021, Tatum pled guilty to falsifying records as charged in the Indictment.

After the Indictment was filed, additional records were produced indicating that Defendant

conspired with Tatum in the falsification of records between at least February 13 through February 20, 2018. Defendant was charged with conspiracy to falsify records, and falsifying records in Counts Four and Five of the Superseding Indictment. Specifically, the evidence at trial will show that two months after their December 2017 extortions, Defendant and Tatum conspired to create a false police report and false press release regarding the December 5, 2017 extortion. Tatum then submitted those false documents to the FBI in February 2018.

### D.   Impersonating a Federal Officer

Based on Defendant's acts already asserted in the Complaint and Indictment, the Superseding Indictment also charges Defendant with conspiracy to impersonate a federal officer and impersonating a federal officer in Counts Six and Seven. Specifically, the evidence presented at trial will show that in both charged extortions, Defendant impersonated a federal agent by telling victims E.F. and B.L. that he was an agent of the ATF.

## II.  Defendant's Proffer Statements

In early 2022, after the Government provided the defense with a reverse proffer, Defendant, through then-attorney Joshua Visco, indicated a desire to discuss the facts of the case with the Government. As such, the parties entered into a proffer agreement and scheduled a proffer interview to take place on February 1, 2022. The proffer agreement was signed by Defendant, Attorney Visco, and Assistant United States Attorney Cynthia Frey. *See* Exhibit 1 to the Declaration of AUSA Abraham Fine (proffer agreement). Paragraph 2 of that proffer agreement stated that: "Except as set forth in paragraphs (3), the Office will not offer in evidence any statements made by Client at the meeting (a) in a grand jury proceeding to indict Client; (b) in its case-in-chief at a trial against Client, or (c) at Client's sentencing." *Id*. at page 2. Paragraph 3 of the proffer agreement, however, stated:

> (3) Notwithstanding paragraph (2), the Office may use any statements made by Client at the meeting for any purpose (a) if Client testifies at any hearing or trial; or (b) to rebut any evidence offered, or factual assertions made, by or on behalf of Client at any stage of a criminal prosecution (including but not limited to a detention hearing, trial, or sentencing).

*Id*. The proffer interview went forward on February 1, 2022. Present at the interview were Defendant, Attorney Visco, AUSA Frey, as well as two FBI agents. The FBI Memorialized the proffer session in a detailed interview memorandum, and it was not recorded. *See* Fine Decl. Ex. 2 (memorandum of

interview).  At the beginning of that proffer session, Defendant acknowledged he signed and agreed to the proffer agreement, and agreed to be interviewed by the FBI and the United States Attorney's Office. *Id*. at 1.

During the proffer session, Defendant discussed his police background, described the RPDPS drug interdiction team, and recounted his relationship at Tatum.  After initially attempting to minimize his role in the charged conduct, Defendant went on to admit his presence at the December 18, 2017 traffic stop of B.L. and his part in producing the false police report and press release in February 2018. *Id*. at 3-4.  Furthermore, Defendant admitted during the proffer interview that he and Tatum agreed to extort drivers for marijuana in December of 2017, that Defendant and Tatum conducted multiple extortions during that month, that Defendant expected to receive money from these extortions, and that he knew that his acts were criminal.  *Id*. at 4-5.  Defendant did not admit to actually receiving any money from he and Tatum's extortions and did not admit to impersonating a federal agent.  *Id*. at 3-4.  Furthermore, despite acknowledging his involvement in the December 18, 2017 stop of victim B.L., Defendant did not admit to being present at the December 5, 2017 extortion of victim E.F.  *Id*. at 2.

## ARGUMENT

The seminal Ninth Circuit case holding that statements made during a proffer interview are admissible at trial is *United States v. Rebbe*, 314 F.3d 402 (9th Cir. 2002).  There, the defendant was charged with a slew of tax offenses.  Leading up to trial, the defendant met with the government to explore possibility of a plea.  As in our case, the government and the defendant entered into a standard proffer agreement, which stated as follows:

> the government may use ... statements made by you or your client at the meeting and all evidence obtained directly or indirectly from those statements for the purposes of cross-examination should your client testify, or to rebut any evidence, argument or representations offered by or on behalf of your client in connection with the trial....

*Id*. at 404.  During the proffer interview, the defendant made incriminating statements.  Subsequently, plea negotiations fell apart, the defendant proceeded to trial, and the defendant presented a four-witness defense case, which defense case was inconsistent with the statements the defendant made during his proffer interview.  As such, the district court allowed the government to introduce defendant's proffer statements in its rebuttal case via law enforcement witnesses who were present at the interview.  *Id*. at

404-05.

In *Rebbe*, the Ninth Circuit affirmed the district court's ruling. In holding that admission of the defendant's proffer statements was proper, the Ninth Circuit acknowledged that Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11(e)(6) generally prohibit admission of statements made during plea negotiations.[1] The Ninth Circuit held, however, that the defendant waived the protections of those rules by signing the standard proffer agreement, which proffer agreement "permit[ted] the Government to use Rebbe's proffer statements 'to rebut any evidence, argument or representations' offered by Rebbe or on his behalf in connection with the trial." *Id*. at 407. Accordingly, the Ninth Circuit went on to conclude that "in light of the fact that Rebbe presented a defense that was inconsistent with his proffer statements and the Government did not seek to admit Rebbe's proffer statements in its case-in-chief, we cannot discern any error on the part of the district court in admitting Rebbe's proffer statements in rebuttal." *Id*.

Since *Rebbe*, the Ninth Circuit and other courts have continued to hold that a defendant's proffer statements are admissible at trial if the defendant presents evidence inconsistent with those statements. *See, e.g., United States v. Cha*, 769 Fed.Appx 435, 436 (9th Cir. 2019) ("Cha's proffer agreement allowed the government to use his proffer statements to 'refute or counter ... any ... statement or representation offered by or on behalf of' Cha. Because Cha's attorney made assertions at trial that were inconsistent with Cha's proffer statements, the district court did not err in admitting those statements into evidence."); *United States v. Colby*, No. 17-CR-0168-LHK, 2018WL 2688882 at *6 (N.D. Cal June 5, 2018) (allowing introduction of proffer statements for impeachment and rebuttal purposes); *United States v. Petrosian*, 446 Fed.Appx 826, 828 (9th Cir. 2011) ("The district court properly admitted the statements Petrosian made during a proffer session."). Moreover, courts in other circuits have held that such proffer statements are admissible even in the government's case-in-chief, so long as the defense makes arguments or elicits evidence inconsistent with the proffer statements during its opening

---

[1] It should be noted that the Defendant also agreed, pursuant to the Proffer Agreement, that: statements made by Client and the Office at this meeting do not constitute "plea discussions" or any "related statement" within the meaning of Federal Rule of Criminal Procedure 11(f) or statements "made in the course of plea discussions" within the meaning of Federal Rule of Evidence 410.

5

statement or during cross examination of witnesses.  *See United States v. Barrow*, 400 F.3d 109, 117 n. 7 (2d. Cir. 2005) ("the critical issues for purposes of determining admissibility should be whether defendant's waiver does explicitly apply, as in this case, to 'any stage' of his prosecution, and whether he has, in fact, triggered that waiver.  If these questions are fairly answered in the affirmative, and if the evidence is otherwise admissible, the question of when in the course of trial the proffer statements should be presented to the jury is a matter sensibly left to the sound discretion of the trial judge."); *United States v. Burch*, 156 F.3d 1315, 1321–22 (D.C. Cir. 1998) (proffer statements admissible at trial if defendant elicits evidence or makes argument inconsistent with those statements); *United States v. Young*, 223 F.3d 905, 910–11 (8th Cir. 2000) (same).

Our case is on all fours with *Rebbe* and its progeny.  Here, the government does not intend to introduce Defendant's proffer statements during its case-in-chief.  And, like the above-described cases, Defendant signed a broad waiver agreeing that the government could introduce his proffer statements at trial should he testify or to rebut any evidence offered, or factual assertions made, by or on behalf of Defendant at trial.  At the beginning of his proffer session, Defendant acknowledged that he signed and agreed to the parties' proffer agreement.  Defendant then went on to make incriminating statements to the FBI, admitting his conspiracy to extort under color of official right with Tatum, and his part in falsifying the police report in relation to the December 5, 2017 stop and seizure, knowing that the validity of the stop was being investigation by the FBI.  Accordingly, if Defendant testifies or puts on a defense case inconsistent with his admissions at the proffer—for example, if Defendant denies that he and Tatum agreed to extort drivers for marijuana in December of 2017—then the government should be permitted to introduce Defendant's proffer statements in its rebuttal case by calling to the stand the two FBI agents that participated in the proffer session.

DATED:  September 5, 2023

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

 /s/
ABRAHAM FINE
CYNTHIA FREY
Assistant United States Attorneys