CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ABRAHAM FINE (CABN 292647)
BENJAMIN K. KLEINMAN (NYBN 5358189)
Assistant United States Attorneys

   1301 Clay Street, Suite 340S
   Oakland, California 94612
   Telephone: (510) 637-3680
   FAX: (510) 637-3724
   Abraham.fine@usdoj.gov
   Benjamin.kleinman2@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JOSEPH HUFFAKER, <br><br> Defendant. | CASE NO. 3:21-CR-00374-MMC <br><br> **UNITED STATES' MOTION IN LIMINE NO. 11 RE DEFENDANT'S INTERNAL AFFAIRS INVESTIGATION STATEMENTS FOR IMEACHMENT, IN REBUTTAL, OR IN ITS CASE IN CHIEF** |

**INTRODUCTION**[1]

On March 22, 2018, and June 6, 2018, the defendant, Joseph Huffaker, was interviewed with his attorney present during an internal affairs ("IA") investigation related to the conduct for which he was ultimately charged in the instant matter. At the beginning of these interviews, the defendant was informed that he could lose his job if he refused to answer questions. During these interviews, the defendant admitted to conducting a traffic stop of a white Mercedes Benz with Sgt. Jacy Tatum on December 18, 2017, wherein he seized marijuana.

On February 1, 2022, the defendant sat for a proffer interview with his attorney and the government.[2] Before the interview, the parties signed a proffer agreement, pursuant to which the defendant waived any rights or privileges he had pursuant to *Garrity v. New Jersey*. That proffer agreement provided that "To the extent that any statement Client [the defendant] previously made was compelled by threat of job loss, Client hereby knowingly, intelligently, and voluntarily waives any privilege that would otherwise attach to these statements. Client agrees that, should any trial occur, these statements may be used against him during any criminal trial . . . ." Given the defendant's clear and unambiguous waiver, as well as the case law setting forth that such waivers are valid, the defendant's admissions during his IA interviews are admissible at trial. Accordingly, should the defense present argument or testimony that is inconsistent with these statements, the government should be permitted to impeach the defendant with those statements and also present evidence of the defendant's statements either in rebuttal or in its case in chief. In addition, as the Court previously ruled, the government should be allowed to introduce the defendant's out-of-court statements, but the defendant should be precluded from introducing his own out-of-court statements. *See* Dkt. No. 179 (granting the government's Motion in Limine No. 6).

---

[1] On September 5, 2023, the government filed its Motions in Limine Nos. 1-9 and the Court ruled on those motions at the initial pretrial conference. *See* Dkt. No. 179.

[2] Among other statements, the defendant admitted in that interview that he and co-defendant Brendon Tatum agreed to extort drivers under color of official right for marijuana in December of 2017, that they committed multiple such extortions, that the defendant expected to receive money from these extortions, and that he knew his acts were criminal.

1

# BACKGROUND

**I.    The Pending Charges Against Defendant**

Defendant Joseph Huffaker and his co-conspirator, Brendan Jacy Tatum, are charged in Count One of the Superseding Indictment with conspiracy to commit extortion under color of official right, in violation of 18 U.S.C. § 1951.  The evidence at trial will show that Huffaker and Tatum, as officers of the City of Rohnert Park's Department of Public Safety ("RPDPS"), conspired in December 2017 to pull over drivers suspected of possessing large amounts of marijuana, told those drivers that they were federal agents working for the ATF, seized the drivers' marijuana, and sold the marijuana through a dealer.  Among other charges, Tatum pled guilty to this conspiracy pursuant to a cooperation agreement and is expected to be a witness for the government at trial.

Count Three of the Superseding Indictment charges Huffaker with extortion under color of official right relating to events occurring on December 18, 2017.  The evidence presented at trial related to that count will show that on December 18, 2017, Huffaker and Tatum pulled over victim B.L., told him that they were ATF agents, and extorted approximately 23 pounds of marijuana from him.  During this stop, two California Highway Patrol ("CHP") Officers observed the stop in progress, offered assistance to Tatum and Huffaker, and one officer later identified Huffaker from a photo lineup.

After this stop, B.L. submitted a complaint to the Mendocino County Sheriff's Office about the traffic stop and requested the return of his marijuana.  The next day, a representative of the Mendocino County Sheriff's Office called Tatum to ask if he had conducted the B.L. stop.  Tatum confirmed that he had made the stop and then checked in 30 pounds of marijuana as found property to the Rohnert Park evidence room.

Counts Four and Five charge Huffaker with conspiracy to falsify records in a federal investigation in violation of 18 U.S.C. § 371, as well as falsifying records in violation of 18 U.S.C. § 1519.  Those counts charge Huffaker with knowingly falsifying records in February 2018 with the intent to impede, obstruct, and influence the investigation and proper administration of an investigation into the lawfulness of a RPDPS patrol stop and seizure in December of 2017, a matter that Huffaker knew and contemplated was within the jurisdiction of the FBI.  Specifically, the evidence at trial will show that two months after their December 2017 extortions, after extortions by local police had been reported

2

in the media and heat was starting to come down on Huffaker and Tatum, Huffaker and Tatum conspired to create a false police report and false press release regarding the December 18, 2017, extortion. Tatum then submitted those false documents to the FBI in February 2018. Tatum pled guilty to falsifying records based on the above-described facts.

Counts Six and Seven charge Huffaker with conspiracy to impersonate a federal officer and impersonating a federal officer. Specifically, the evidence presented at trial will show that part of Huffaker and Tatum's conspiracy was to tell their victims they were federal agents to scare them because most local marijuana growers were not concerned about state-level enforcement. As to the substantive count, Huffaker and Tatum impersonated federal agents by telling victim B.L. that they were agents of the ATF during the December 18, 2017, stop.

## II.     Defendant's Statements During IA Interviews

As part of its case in chief, the government expects that former CHP Officer Robert Simas will testify that he observed the defendant at a traffic stop on Highway 101 on December 18, 2017. If the defendant attempts to suggest or argue that he was not at the stop on December 18, 2017, such as questioning Officer Simas' identification of the defendant, the government may seek to admit any statements that rebut that implication, including, but not limited to, the following lines from the defendant's IA interviews:

**The defendant admitted he was at the car-stop on December 18, 2017**

> Q. Okay. Do you recall being with Sgt. Tatum on December 18th and making a car-stop up on Highway 101 when you and he seized some 30 pounds of marijuana as found property?
> A. Yeah. So the 18th, I do believe, is the date that the traffic stop we were discussing in our last interview. I now believe that's actually the date that it occurred. So what I was relayed via Sgt. Tatum was he had been contacted by I think it was the Mendocino County sheriff; and they had relayed to him there was a traffic stop involving us, that CHP was there, that we were on; and I think they provided him the date of December 5th.
> Ex. 2, pg. 5, lns. 7-19.

3

**The defendant described the car he stopped**

Regarding what car the defendant and Sgt. Tatum stopped, the defendant answered, "It was a Mercedes-Benz." Ex. 2, pg. 9, ln. 6..

A. No, it was -- a hundred percent, it was a Mercedes Benz –

Q. SUV?

A. -- some sort of SUV with an Oakland dealership -- you know, the paper plate, like wherever you buy, you know, from. Ex. 2, pg. 9, lns. 20-24.

**The defendant provided a description of the person he stopped**

A. Yeah. I think he was, like, probably around thirty-ish. It was a white guy. Ex. 2, pg. 11, lns. 1-2.

**Description of the marijuana taken during the stop**

Q. [Y]ou were with Tatum on a stop on the 18th of December, not the 5th, when you took the 30 pounds of marijuana away from the guy who also had hundreds of vials of hash?

A. Correct, sir. We took that as found property. Ex. 2, pg. 12, lns. 10-14.

**Acknowledging E.F. was not the person the defendant stopped**

Q. And [E.F.], who I just showed you pictures of --

A. Uh-huh.

Q. -- was not the guy that you stopped on the 18th.

A. No. Ex. 2, pg. 13, ln. 23 to pg. 14, ln. 3.[3]

---

[3] On March 13, 2025, the Court granted the government's motion to dismiss Count Two of the operative indictment, which charged the defendant with extorting marijuana from E.F. on December 5, 2017. The government moved to dismiss this count after reviewing alibi evidence provided by defense counsel suggesting neither Huffaker nor Tatum were the officers who stopped E.F. on that date. E.F. is only relevant in that an article stemming from E.F.'s allegations prompted the defendant and his partner, Brendan Jacy Tatum, to falsify records; Tatum discussed the article with Huffaker and they mistakenly believed that E.F. was one of victims they had extorted in December of 2017. As the above quote

4

**Acknowledging CHP arrived on scene during the stop**

Q. Highway patrol arrive on scene?

A. Yes, sir. Ex. 1, pg. 56, lns. 6-7.

**Car stop location**

Q. The car stop was made southbound on 101?

A. Correct. Ex. 1, pg. 58, lns. 12-13.

**The defendant's description of his own clothing**

Q. How were you dressed the day of the stop?

A. I was wearing my back boots, jeans, it would have been either black or gray t-shirt, a black or great sweatshirt, a ball cap, and then my typical vest I would wear, like, a tac vest. Ex. 1, pg. 64, ln. 25 – pg. 65, ln. 7.

Q. One of them says "Police" on the front and back and –

A. Yup

Q. In big letters?

A. That's mine.

Q. Is that the one you wear?

A. Yeah. Big "Police." Ex. 1, pg. 64, lns. 11-16.

## ARGUMENT

A statement that would otherwise be protected by *Garrity* may nonetheless be used during a prosecution if the defendant has waived his or her Fifth Amendment *Garrity* rights. The Eleventh Circuit's decision in *United States v. Smith*, 821 F.3d 1293 (11th Cir. 2016) is directly on point. There, a police officer was convicted of various offenses and the defendant's compelled statements made

---

shows, Tatum and Huffaker realized they were mistaken and had nothing to do with the E.F. stop.

5

during an internal investigation were introduced at trial over the defendant's objection. On appeal, the Eleventh Circuit held that the defendant's waiver of his *Garrity* rights was valid as thus the statements were admissible at trial. *Id.* at 1305-06 (finding that defendant's waiver of *Garrity* rights – using the Civil Rights Division's standard waiver form – was knowing and voluntary). Federal courts around the country have ruled similarly regarding waivers of related privileges and immunities. *See, e.g., United States v. Anderson*, 79 F.3d 1522, 1527-30 (9th Cir. 1996) (discussing impact of written waiver on statutory immunity); *United States v. Hartmann*, 958 F.2d 774, 791 (7th Cir. 1992) (holding defendant waived any right to promised immunity when he stopped cooperating).

Here, the defendant formally executed a *Garrity* waiver as part of his proffer agreement. As previously stated, on February 1, 2022, the defendant and the defendant's attorney signed the Government's proffer agreement, which provides that:

> (6) Waiver of *Garrity* Rights: Client agrees that, to prepare for this proffer, the government will review, and may ask about, any statement Client has previously made about the matter under investigation or about any other incident relevant to the matter under investigation. Client expressly agrees that this may include the review of statements that were compelled, or arguably compelled, by threat of job loss. Absent waiver, a statement compelled by threat of job loss would be deemed privileged under *Garrity v. New Jersey,* 385 U.S. 493 (1967) and could not be used by the government against Client in a criminal proceeding. Review of these statements will assist the government in evaluating the truthfulness and completeness of the information provided during the proffer.
>
> To the extent that any statement Client previously made was compelled by threat of job loss, Client hereby knowingly, intelligently, and voluntarily waives any privilege that would otherwise attach to these statements. Client agrees that, should any trial occur, these statements may be used against him during any criminal trial or during any hearing, including a sentencing hearing, held in connection with such a criminal trial.

*See* Ex. 3. The defendant knowingly signed a *Garrity* waiver with his attorney present, which explicitly stated that his previous statements could be used at trial. Furthermore, the Court already ruled that the defendant's proffer agreement was knowing and voluntary in the context of granting the government's Motion in Limine No. 1. regarding introduction of the defendant's proffer statements for impeachment or rebuttal. *See* Dkt. No. 145 (motion) and No. 179 (minute order granting motion). Given the defendant's knowing and voluntary *Garrity* waiver, the defendant's admissions during his IA interview

1  are admissible. In addition, as the Court previously ruled, the government should be allowed to
2  introduce the defendant's out-of-court statements, but the defendant should be precluded from
3  introducing his own out-of-court statements. *See* Dkt. No. 179 (granting the government's Motion in
4  Limine No. 6).

6  DATED: June 10, 2025                                          Respectfully submitted,

                                                                 CRAIG H. MISSAKIAN
8                                                                United States Attorney

                                                                   /s/
10                                                               ABRAHAM FINE
                                                                 BENJAMIN K. KLEINMAN
11                                                               Assistant United States Attorneys