CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ABRAHAM FINE (CABN 292647)
BENJAMIN K. KLEINMAN (NYBN 5358189)
Assistant United States Attorneys

   1301 Clay Street, Suite 340S
   Oakland, California 94612
   Telephone: (510) 637-3680
   FAX: (510) 637-3724
   Abraham.fine@usdoj.gov
   Benjamin.kleinman2@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:21-CR-00374-MMC |
| Plaintiff, | **UNITED STATES' CONSOLIDATED RESPONSE TO DEFENDANT'S MOTION IN LIMINE NOS. 1 AND 2 RE WITNESS WILLIAM TIMMINS** |
| v. | |
| JOSEPH HUFFAKER, | |
| Defendant. | |

# INTRODUCTION

The operative indictment alleges that between on or about December 5, 2017 and on or about December 18, 2017, Defendant Joseph Huffaker and his co-conspirator, Brendan Jacy Tatum, conspired to pull over drivers suspected of possessing large amounts of marijuana, told those drivers that they were federal agents working for the ATF, and seized the drivers' marijuana for personal profit. They sold the marijuana to William Timmins, who will testify that in December of 2017, Defendant and Tatum met him on the side of the highway and loaded a significant amount of marijuana into his car. In return, Timmins provided Tatum with thousands of dollars in cash meant to be split between Tatum and Huffaker. Timmins played an important role in Defendant and Tatum's conspiracy and will be a key witness at trial.

In his Motion in Limine Nos. 1 and 2, Defendant moves to exclude Timmins' testimony for three reasons. ***First***, Defendant argues that the government violated Rule 16 by interviewing Timmins on May 16, 2025, and producing a memorandum of that interview to the defense on May 27, 2025 (eleven days after the interview). Defendant's argument fails for two primary reasons. As an initial matter, government memoranda summarizing witness interviews do not fall under Rule 16. To the extent they are discoverable, they are *Jencks* material, and the Jencks Act requires only that the government disclose *Jencks* material after the witness has testified on direct examination at trial. *See* 18 U.S.C. § 3500. Here, even though not required, the government provided the interview memorandum to the defense as soon as it was finalized, which was 11 days after the interview. Moreover, the government produced to the defense the expected substance of Timmins' testimony more than a year ago. In March 2024, the government produced a memorandum of an interview with Tatum which described Timmins' role in the scheme as well as a description of the incident where Defendant and Tatum met Timmins on the side of the road and loaded marijuana into Timmins car. In other words, the defense has been on notice of Timmins' role in the scheme for 15 months. As such, there was no discovery violation.

***Second***, Defendant argues that Timmins' testimony is irrelevant or somehow constitutes unnoticed Rule 404(b) evidence. Not so. Timmins' testimony is very relevant to the charged conspiracy, as he was the person to whom Defendant and Tatum sold the illegally extorted marijuana during the conspiracy period charged in the indictment. In addition to being directly relevant to the

2

charged crimes, Timmins' testimony is inextricably intertwined with the charged crimes, as it sheds light on Defendant's intent and state of mind regarding the extorted marijuana.  Accordingly, Timmins testimony is admissible and does not constitute unnoticed Rule 404(b) testimony.

*Third*, Defendant asserts that Timmins cannot testify absent immunity due to his involvement in Defendant and Tatum's scheme and also because he allegedly provided false statements to federal investigators.  The government strenuously disputes that Timmins gave any false statements to the government.  Nevertheless, given Timmins' admitted involvement with marijuana, the government has obtained authority from the Department of Justice to seek court-ordered immunity for Timmins and expects to submit that application to the Court before trial.

## ARGUMENT

**I. The government did not commit a discovery violation by interviewing Timmins on May 16, 2025 and producing the interview memorandum eleven days later.**

In September of 2023, the government interviewed Tatum.  During that interview, Tatum stated that he and Defendant sold the marijuana they illegally obtained in December of 2017 to Timmins. Tatum described a specific incident where Defendant and Tatum met Timmins next to the highway in Cloverdale and Defendant and Tatum loaded marijuana into Timmins' car.  The memorandum of that interview with Tatum stated as follows:

> In December of 2017, TATUM called TIMMINS after Joeseph [sic] Huffaker (HUFFAKER) and TATUM illegally seized marijuana during an unauthorized traffic stop. B. TIMMINS met TATUM and HUFFAKER just off the Commiski Road exit at the turnaround. TATUM and HUFFAKER gave B. TIMMINS black trash bags full of marijuana. It was late morning or early afternoon when they met B. TIMMINS. TATUM only met B. TIMMINS once at the Commiski Road turnaround. However, this was not the only time TATUM gave TIMMINS marijuana in 2017.
>
> \* \* \*
>
> HUFFAKER would have witnessed TATUM give B. TIMMINS marijuana in December of 2017. HUFFAKER was aware the reason for meeting B. TIMMINS at the turnaround was to give B. TIMMINS marijuana. HUFFAKER would have been present for the coordinating telephone calls between TATUM and B. TIMMINS.
>
> \* \* \*
>
> TATUM and HUFFAKER would stop cars, illegally seize marijuana, and then TATUM would call B. TIMMINS on the phone. TATUM would give B. TIMMINS marijuana and wait for B. TIMMINS to sell the marijuana. TATUM and B. TIMMINS would split the proceeds 50/50. When

3

>    HUFFAKER was involved, the split would be 50% for B. TIMMINS and
>    HUFFAKER and TATUM would each get 25%. It would take a long time
>    for B. TIMMINS to sell the marijuana, TATUM would not get paid right
>    away. The marijuana TATUM and HUFFKAER gave B. TIMMINS in
>    December 2017, took at least two weeks to sell.
>
>    * * *
>
>    In December 2017, TATUM and HUFFAKER received approximately
>    $13,000 each from B. TIMMINS.

Fine Decl. at ¶ 3. On March 13, 2024, the government produced that interview memorandum to the defense. *Id*. Accordingly, the defense has been on notice of Timmins' role in the scheme, as well as the specific incident on the size of the highway, since March of 2024.

After Tatum told the government about Timmins' role in the conspiracy, the FBI attempted to contact Timmins. On October 5, 2023, Timmins sat for a short interview with agents, during which he invoked his right to counsel. After Timmins obtained counsel, and after the trial date in this case was postponed several times and the current trial date set, Timmins and his counsel agreed to sit for an interview with the government on May 16, 2025. During that interview Timmins described that he obtained marijuana from Defendant and Tatum in December of 2017 and provided Tatum with cash in return. The government produced a memorandum of that interview on May 27, 2025. *Id*. at ¶¶ 4-5.

Given these facts, the government has not committed any sort of discovery violation. The defense has been on notice of Timmins' role in the conspiracy since March of 2024, before the Court ordered Rule 16 discovery cut off. As soon as the government heard the same set of facts from Timmins, it disclosed that interview memorandum to the defense. Simply put, the government could not have disclosed anything to the defense sooner, as it did not interview Timmins with his counsel until May 16, 2025.

Moreover, even if the government had somehow been late in disclosing the Timmins interview memorandum, that would not constitute a Rule 16 violation. Rule 16 sets forth several categories of materials the government must produce to the defense and government memoranda of witness interviews do not fall within those categories. To the extent government memoranda of witness interviews are discoverable at all, they could arguably be considered *Jencks* material, and the Jencks Act requires only that the government disclose *Jencks* material after the witness has testified on direct

4

examination at trial.[1]  *See* 18 U.S.C. § 3500.

In sum, the government could not have produced material related to Timmins more expeditiously than it did in this case.  When the government learned of Timmins' role in the conspiracy from Tatum, it turned over that information to the defense in March of 2024.  When the government interviewed Timmins and heard the story from him, it produced the interview memorandum within 11 days.  The government has not committed any discovery violation and there is no basis to exclude Timmins' testimony.

**II.    Timmins' testimony is directly relevant to the charged crimes and is also inextricably intertwined with the charged conduct.**

As set forth above, Timmins' testimony is directly relevant to the charged conspiracy.  Timmins will testify that in December of 2017 he obtained marijuana from Defendant and Tatum, sold the marijuana, and provided money back to Tatum.  Specifically, Timmins will testify that Defendant and Tatum met him on the side of the highway and loaded a significant amount of marijuana into his car.  In return, Timmins provided Tatum with thousands of dollars in cash meant to be split between Tatum and Huffaker.  Defendant's assertion that this activity relates to uncharged conduct is simply wrong.  These actions relate directly to the charged conspiracy between Defendant and Tatum.

Defendant also asserts that, according to the government, Defendant's criminal conspiracy "did not begin until December 18, 2017." Dkt. No. 292 at 3.  Defendant is incorrect.  Count One of the operative indictment, which charges conspiracy to commit extortion under color of right, alleges that Defendant's conspiracy began on or about December 5, 2017 and ended on or about December 18, 2017.  As such, Timmins' testimony about his interactions with Defendant and Tatum during December of 2017 are directly relevant to the charged conspiracy.

Even if Timmins' testimony were somehow considered uncharged conduct, Timmins' testimony is inextricably intertwined with the charged conduct because it sheds light on an essential element of the charged crimes, namely Defendant's state of mind.  Evidence of other acts is inextricably intertwined

---

[1] The Supreme Court's decision in *Palermo v. United States*, 360 U.S. 343, 349 (1959) suggests that FBI interview memoranda are not discoverable under the Jencks Act because they are not statements of the witness within the meaning of the statute.  Of course, the FBI interview memoranda would be discoverable under the Jencks Act as a statement of the agent, if the agent who prepared it is called as a witness to testify regarding the subject matter contained in the report.

when (1) it constitutes a part of the transaction that serves as the basis for the criminal charge, or (2) it helps the prosecutor offer a coherent and comprehensible story regarding the commission of the crime. *United States v. DeGeorge*, 380 F.3d 1203, 1220 (9th Cir. 2004) (citation omitted). Furthermore, the Ninth Circuit has held that uncharged transactions in a scheme should not be excluded as "other act" evidence if they are part of the same scheme or if they are inextricably intertwined with the charged conduct. *See United States v. Loftis*, 843 F.3d 1173, 1176-78 (9th Cir. 2016) ("even if the uncharged transactions at issue were not part of the crime charged, they would not be subject to exclusion under Rule 404(b) because they are 'part of the same transaction' as the charged transactions. The inextricably intertwined doctrine, therefore, affords a second basis for concluding the evidence should not be treated as 'other' crimes or 'other' acts evidence under Rule 404(b)."); *see also United States v. Martinez-Rodriguez*, 472 F.3d 1087, 1089-1091 (9th Cir. 2007) ("Rule 404(b) does not exclude evidence forming an essential element of the charged crime."). As the Ninth Circuit explained, "[t]he policies underlying Rule 404(b) are inapplicable when offenses committed as part of a single criminal episode become other acts simply because the defendant is indicted for less than all of his actions." *United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir. 1993).

Here, admission of Timmins' testimony permits the government "to offer a coherent and comprehensible story regarding the commission of the crime." *DeGeorge*, 380 F.3d at 1220 (citation omitted). A clear motivation for Defendant's extortion of marijuana from drivers was to make money. Timmins' testimony helps tell the story of how Defendant made money from his extortion and sheds light on Defendant's state of mind when he was making the traffic stops during the conspiracy period. As such, Timmins' testimony is inextricably intertwined with the charged conspiracy.

**III.   Timmins did not give false statements to the FBI.**

As set forth above, on October 5, 2023, Timmins sat for a short interview with agents. Fine Decl. at ¶ 4. According to the FBI memorandum of that interview, Timmins told agents that Tatum had told him that he had stolen marijuana while he was on the interdiction team. *Id*. Timmins also stated he was not aware of Tatum's interdiction scheme while it was happening. *Id*. When agents asked Timmins about his involvement with marijuana, he invoked his right to counsel. *Id*.

After Timmins obtained counsel, and after the trial date in this case was postponed several times

and the current trial date set, Timmins and his counsel agreed to sit for an interview with the government on May 16, 2025. *Id*. at ¶ 5. During that interview Timmins described that he obtained marijuana from Defendant and Tatum in December of 2017 and provided Tatum with cash in return. *Id*. The government produced a memorandum of that interview on May 27, 2025. *Id*.

Nothing about these statements is false. In October of 2023, Timmins began answering agents' questions but then requested to speak with a lawyer when the subject of his own involvement in marijuana came up. After obtaining counsel, Timmins provided the government with the information described above regarding his interactions with Defendant and Tatum in December of 2017.

Nevertheless, given Timmins' involvement with marijuana, the government has obtained authority from the Department of Justice to seek court-ordered immunity for Timmins and expects to submit that application to the Court before trial.

## CONCLUSION

For the reasons stated above, the government respectfully requests that the Court deny Defendant's Motion in Limine Nos. 1 and 2 seeking to exclude the testimony of William Timmins.

DATED: June 17, 2025

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

   */s/*
ABRAHAM FINE
BENJAMIN K. KLEINMAN
Assistant United States Attorneys