1   CRAIG MISSAKIAN (CABN 125202)
    United States Attorney
2
    MARTHA A. BOERSCH (CABN 126529)
3   Chief, Criminal Division

4   ABRAHAM FINE (CABN 292647)
    BENJAMIN K. KLEINMAN (NYBN 5358189)
5   Assistant United States Attorneys

6       1301 Clay Street, Suite 340S
        Oakland, California 94612
7       Telephone: (510) 637-3680
        FAX: (510) 637-3724
8       Abraham.fine@usdoj.gov
        Benjamin.kleinman2@usdoj.gov
9
    Attorneys for United States of America
10
                    UNITED STATES DISTRICT COURT
11
                  NORTHERN DISTRICT OF CALIFORNIA
12
                      SAN FRANCISCO DIVISION
13

14  UNITED STATES OF AMERICA,            )   CASE NO. 21-CR-0374-MMC
                                         )
15          Plaintiff,                   )   **UNITED STATES' SENTENCING**
                                         )   **MEMORANDUM**
16      v.                               )
                                         )   Date:    January 21, 2026
17  JOSEPH HUFFAKER,                     )   Time:    2:15 p.m.
                                         )   Court:   Honorable Maxine M. Chesney
18                                       )
            Defendant.                   )
19                                       )
    _____)
20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Defendant Joseph Huffaker abused his position as a Rohnert Park police officer to line his own pockets.  The evidence presented at trial showed that in December 2017, Defendant and Brendon Jacy Tatum conspired to pull over drivers suspected of possessing large amounts of marijuana, falsely told those drivers that they were federal agents working for the ATF, stole the drivers' marijuana, and sold the marijuana for personal profit.  Two months later, when others in law enforcement and in the media started asking questions about their illegal activity, Defendant and Tatum obstructed justice by composing a false police report and sending it to the FBI.  Defendant proceeded to trial and the jury convicted him of committing extortion under color of official right, impersonating a federal agent, obstructing justice, and conspiracy to commit those offenses.  Despite the overwhelming evidence presented at trial, Defendant has not shown any remorse or accepted responsibility for his actions.

This egregious abuse of the public trust demands a significant custodial sentence.  Here, there were direct victims.  B.L. testified about the shock he felt when two visibly armed police officers in tactical vests surrounded him and threatened to take him to station if he didn't give in to their extortion.  And Tatum testified that he and Defendant extorted others during their conspiracy.  But when police officers engage in extortion and fraud it doesn't just affect the direct victims.  It also erodes society's confidence in government and our shared institutions.  Corrupt police officers like Defendant overshadow the good work done by the vast majority of law enforcement personnel and create an atmosphere of distrust, inevitably leading to streets that are less safe.  This type of crime has a lasting impact.

For the reasons set forth below, the government respectfully requests that the Court sentence Defendant to a low-end Guidelines sentence of 63 months imprisonment, a three-year term of supervised release (with the conditions recommended by probation), $23,000 in restitution, and a mandatory $600 special assessment.

**BACKGROUND**

**I.    <u>Offense Conduct</u>**

Defendant Joseph Huffaker and his co-conspirator, Brendan Jacy Tatum, were police officers with the City of Rohnert Park's Department of Public Safety ("RPDPS").  Probation Presentence Report

UNITED STATES' SENTENCING MEMORANDUM   2
21-CR-0374-MMC

("PSR") at ¶ 8.  In 2015 and 2016, Defendant and Tatum were part of the RPDPS interdiction team that was tasked with seizing illegal drugs along highway 101.  *Id.*, ¶ 9.  Tatum was the sergeant in charge of the interdiction team and Defendant was a member of that team.  *Id.*  Tatum testified that during this time period, he regularly stole marijuana from the RPDPS station and extorted marijuana from drivers, which he sold for personal profit.  The RPDPS interdiction team was terminated in January 2017 after California legalized the recreational use of marijuana and the Sonoma County District Attorney stated that the office would no longer pursue marijuana prosecutions.  *Id.*

After interdiction operations ceased, Defendant and Tatum attempted to get interdiction operations back up and running, but RPDPS management rejected these attempts.  In December 2017, Defendant and Tatum conspired to pull over drivers suspected of possessing large amounts of marijuana, told those drivers that they were federal agents working for the ATF, seized the drivers' marijuana, and sold the marijuana through a dealer.  *Id.*, ¶ 11.  While Tatum testified that he and Defendant extorted several victims during December of 2017, the evidence at trial focused on the stop of B.L. on December 18, 2017.  *Id.*, ¶ 12.  On that date, Defendant and Tatum, wearing plain clothes, tactical vests, and driving in an unmarked black SUV, pulled over B.L. near the Sonoma-Mendocino border and identified themselves as ATF agents.  *Id.*  Defendant and Tatum told B.L. that he had two choices: he could give them his 23 pounds of marijuana (valued about approximately $1,000/pound) or they could seize the marijuana and "take him into the station."  *Id.*, ¶ 13.  When B.L. asked for identification, they asked if he "wanted to make a federal case out of it."  *Id.*  B.L. testified that he was in "shock" and thought he was being robbed.  Defendant and Tatum then extorted B.L.'s marijuana without providing any documentation.  *Id.*

Defendant and Tatum committed multiple other extortions in December of 2017 following the same playbook.  *Id.*, ¶ 18.  Tatum testified at trial that he and Defendant committed three to four extortions during that month.  *Id.*  Tatum also testified that he and Defendant made $26,000 ($13,000 each) from their extortions in December of 2017, with the split of proceeds being 50% for William Timmins (the marijuana dealer), 25% for Tatum, and 25% for Defendant.  *Id.*  Timmins also testified this was the agreed upon split of the illegal proceeds.  *Id.*  Furthermore, Tatum and Timmins testified at trial that on December 6, 2017, Defendant, Tatum, and Timmins met by the side of the highway, and

1  Tatum and Defendant loaded tens of pounds of marijuana into Timmins' car, which marijuana was the

2  fruits of Defendant and Tatum's extortions from that day.  *Id.*, ¶ 19.

3          Two months after their December 2017 extortions, when marijuana seizures by local police had

4  been reported in the media and heat was starting to come down on Defendant and Tatum, they conspired

5  to create a false police report and false press release regarding the December 18, 2017, extortion.  *Id.*, ¶¶

6  15-17.  Tatum then submitted those false documents to the FBI in February 2018.  *Id.*, ¶ 17.  Shortly

7  thereafter, RPDPS opened an internal investigation and Tatum testified that he and Defendant

8  coordinated to give false testimony during those proceedings.  *See* Dkt. No. 357 at 97-102 (Tatum direct

9  testimony).  Tatum also testified that he and Defendant purchased $13,000 sniper rifles and related

10 firearm accessories shortly after committing these extortions.  *Id.* at 68-72.

11 **II.    Procedural Posture**

12         Defendant and Tatum were originally charged by complaint in March 2021 and then by

13 indictment, filed on September 21, 2021, with conspiracy to commit extortion under color of official

14 right, in violation of 18 U.S.C. § 1951, as well as substantive counts of extortion under color of official

15 right.  PSR ¶ 1.  In December of 2021, Tatum pled guilty to the conspiracy with Defendant to Commit

16 Extortion Under Color of Official Right (among other charges).  *Id.*, ¶ 6.  On December 13, 2022, the

17 grand jury returned a seven-count superseding indictment charging Defendant with violations of 18

18 U.S.C. § 1951 – conspiracy to commit extortion under color of official right (Count One); 18 U.S.C. §§

19 1951 and 2 – extortion under color of official right (Counts Two and Three); 18 U.S.C. § 371 –

20 conspiracy to falsify records in a federal investigation (Count Four); 18 U.S.C. §§ 1519 and 2 –

21 falsifying records in a federal investigation (Count Five); 18 U.S.C. § 371 – conspiracy to impersonate a

22 federal officer (Count Six); and 18 U.S.C. §§ 912 and 2 – impersonating a federal officer (Count Seven).

23 *Id.*, ¶ 2.  On March 13, 2025, the Court granted the government's motion to dismiss Count Two of the

24 superseding indictment.  *Id.*, ¶ 3.

25         Jury selection in Defendant's trial began on July 3, 2025.  On July 11, 2025, the jury found

26 Defendant guilty of the six counts pending against him.  *Id.*, ¶ 4.  Defendant's sentencing is set for

27 January 21, 2026, and Tatum's sentencing is set for February 18, 2026.

28

1

**ARGUMENT**

2 **I.    Legal Standard**

3       The United States Sentencing Guidelines serve as "the starting point and initial benchmark" of

4 any sentencing process and are to be kept in mind throughout the process.  *See United States v. Carty*,

5 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007).  The

6 overarching goal of sentencing, as set forth by Congress, is for the Court is to "impose a sentence

7 sufficient, but not greater than necessary."  *Carty*, 520 F.3d at 991.  In accomplishing that goal, the

8 Court should consider the factors set forth under 18 U.S.C. § 3553(a), to include:

9           (1)    the nature and circumstances of the offense and the history and
                   characteristics of the defendant;
10

11          (2)    the need for the sentence imposed to reflect the seriousness of the
                   offense, to promote respect for the law, and to provide just
                   punishment for the offense;
12

13          (3)    the need for the sentence imposed to afford adequate deterrence to
                   criminal conduct;

14          (4)    the need to avoid unwarranted sentence disparities among
                   defendants with similar records who have been found guilty of
15                 similar conduct.

16 **II.   Sentencing Guidelines Calculation**

17       **A.    The Sentencing Guidelines calculation set forth in the PSR is correct.**

18       The government agrees with the Sentencing Guidelines set forth in the PSR, which calculates

19 Defendant's offense level is as follows:

20       //

21       //

22       //

23       //

24       //

25       //

26       //

27       //

28

UNITED STATES' SENTENCING MEMORANDUM   5
21-CR-0374-MMC

|  | U.S.S.G. Section | Level/Points |
|---|---|---|
| Base offense level | §2C1.1 | 14 |
| Specific offense characteristics | § 2C.1.1(b)(1) – Offense involved more than one extortion | +2 |
|  | § 2C1.1(b)(2) – Value of marijuana extorted greater than $40,000 | +6 |
|  | 2C1.1(b)(3) – Defendant was a public official in a sensitive position | +4 |
|  | 3C1.1 – Obstruction enhancement | +2 |
| Adjusted offense level |  | 28 |
| Zero Point Offender | §4C1.1 | -2 |
| Total offense level |  | 26 |
| Criminal History Category |  | I |
| **RANGE** |  | 63-78 months |

PSR ¶¶ 23-36.

The Probation Officer concluded that Defendant's criminal history score is 0, and he therefore falls into Criminal History Category I. *Id*., ¶¶ 40-41. As reflected in the PSR, the Guidelines range for imprisonment associated with adjusted offense level 26 and Criminal History Category I is 63 to 78 months. *Id*. ¶ 67. The Probation Officer recommends a 24-month sentence. *Id*. at Sentencing Recommendation.

**B.    Defendant's objections to the PSR's Guidelines calculation are incorrect.**

Defendant makes two objections to the Guidelines calculation set forth in the PSR. First, Defendant asserts that the +2 enhancement for multiple extortions under § 2C.1.1(b)(1) should not apply because he was only convicted of one substantive extortion. Second, Defendant asserts that the +6 enhancement under § 2C1.1(b)(2) (value of marijuana extorted greater than $40,000) should only be a +4 enhancement because the amount of marijuana extorted from B.L. on December 18, 2017, was 23 pounds (valued at $1,000/pound) and thus less than $40,000.

UNITED STATES' SENTENCING MEMORANDUM   6
21-CR-0374-MMC

Both of these objections are incorrect.  As to the first objection, although Defendant was convicted of only one substantive extortion offense, the +2 enhancement for multiple extortions still applies because Defendant and Tatum committed multiple extortions in December of 2017, during the conspiracy period and as part of the conspiracy for which Defendant was convicted.  Tatum testified at trial that he and Defendant went out on 3-4 extortions during that month and committed 5-6 illegal marijuana seizures.  *See* Dkt. No. 357 at 36-37 (Tatum direct testimony); PSR ¶ 18.  Moreover, both Tatum and Timmins testified at trial that on December 6, 2017, Huffaker, Tatum, and Timmins met by the side of the highway and Tatum and Defendant loaded tens of pounds of marijuana into Timmins' car, which marijuana was the fruits of Huffaker and Tatum's extortions from that day.  *See* Dkt. No. 357 at 40-46 (Tatum direct testimony); Dkt. No. 358 at 63-70 (Timmins direct testimony); PSR ¶ 19.  Phone records introduced at trial also corroborate Defendant's location near Hopland (45 miles north of Rohnert Park) on December 6 (the same day Tatum and Defendant committed these extortions and met Timmins by the side of the road at that location).  *See* Trial Exhibit 169 (phone records) at 530.  This event was before the December 18, 2017, substantive extortion of which Defendant was convicted, making clear that Defendant participated in multiple extortions.  These additional extortions were part of the conduct for the conspiracy offense and the fact that Defendant engaged in multiple extortions was proven at least by a preponderance of the evidence.  Furthermore, even if this conduct somehow was not part of the convicted conduct, it would be considered relevant conduct under §1B1.3 of the Guidelines and thus would factor into the offense level calculations and the disputed enhancement.

As to the second objection, the +6 enhancement under § 2C1.1(b)(2) applies because the value of the marijuana extorted during the course of the conspiracy was greater than $40,000.  Tatum testified at trial that he and Huffaker made $26,000 ($13,000 each) from their extortions in December of 2017, during the course of their conspiracy period.  *See* Dkt. No. 357 at 66.  Tatum also testified that the split of proceeds was 50% for Timmins, 25% for Tatum, and 25% for Defendant.  *Id*. at 31-32.  Timmins also testified this was the agreed upon split of the illegal proceeds.  *See* Dkt. No. 358 at 59.  As such, the value of the marijuana extorted was at least $52,000 ($13,000 obtained by each of Defendant and Tatum and $26,000 obtained by Timmins).  Furthermore, as set forth above, both Tatum and Timmins testified about the marijuana exchange that took place on December 6, 2017, which involved tens of pounds

marijuana separate from the 23 pounds of marijuana extorted from B.L. twelve days later.  Accordingly, the total value of the marijuana defendant extorted was at least $52,000 and the +6 enhancement applies.

### III.    The United States' Sentencing Recommendation

Based on a consideration of the Guidelines and the factors in Section 3553(a), the United States submits that a low-end Guidelines sentence of 63 months' imprisonment, coupled with a three-year term of supervised release, and a restitution order of $23,000 to B.L., is sufficient, but not greater than necessary, to comply with the factors set out above.  As set forth below, the government disagrees with Probation's recommendation that a 39-month downward variance from the low-end of the Guidelines range is appropriate in this case.

Primarily, Defendant's criminal conduct was extremely serious.  As set forth above, he extorted marijuana from vulnerable victims on the highway by fraudulently impersonating a federal agent.  These victims were vulnerable because they were breaking federal law themselves, and Defendant knew his victims were unlikely to complain to law enforcement because they would necessarily be implicating themselves in criminal activity.  Then, when the walls began to close in, he obstructed justice in an attempt to cover up his criminal conduct.  A Guidelines sentence is appropriate in this case given the harm caused to Defendant's direct victims as well as the societal harm caused by Defendant's betrayal of the public trust.

Here, a variance below the Guidelines range is not warranted.  At every turn, Defendant has obstructed justice and refused to accept responsibility for his actions.  When media reports relating to Defendant's extortions began to surface in February of 2018, he helped compose a false police report and false press release that were sent to the FBI.  When RPDPS conducted an internal investigation into these allegations, Defendant brazenly lied to investigators.  After the grand jury returned an indictment, Defendant fought the charges and opted to proceed to trial.  Even now, after the jury convicted him on all counts with less than two hours of deliberation, Defendant has not shown any remorse or acceptance of responsibility.  The seriousness of Defendant's conduct, combined with his lack of contrition, militate against a downward variance.

In the same vein, the government respectfully submits that the downward variance recommended

by Probation is unwarranted.  While Probation acknowledges that Defendant has not accepted any responsibility for his crimes, the basis for the recommended variance appears to be that this is Defendant's "first conviction," that he currently has a job that he is likely to lose, that he has not violated the terms of his pretrial release, and that his family will suffer financial harm as a result of Defendant's incarceration.  *See* PSR at Sentencing Recommendation.  These factors, which are present in almost every white-collar prosecution, do not support such a significant downward variance given the seriousness of Defendant's crimes described above and Defendant's lack of remorse.  Defendant is not such an outlier from the typical white-collar or corruption case such that he should receive such a significant downward variance.  Probation's recommendation also asserts Tatum was more culpable than Defendant and describes how Tatum committed extortions for years and made over $400,000 from his criminal activity.  The government agrees that Tatum is more culpable than Defendant and that enhanced culpability is reflected in Tatum's significantly higher Guidelines range (calculated at 87-108 months).  The fact that Tatum is more culpable than Defendant is not a basis for such a significant variance below Defendant's (already lower) Guidelines range.

Finally, the government recognizes the significant number of supportive letters submitted by Defendant's friends and family members.  The government does not doubt the sincerity of these letters.  But these letters, and the support Defendant has received throughout his life, present a double-edged sword.  Many defendants that appear before the Court for sentencing faced difficult upbringings and financial desperation that, while not justifying or excusing their crimes, presents some explanation for their actions and can be a significant factor in the sentence they ultimately receive.  Such circumstances are not present here.  Despite significant familial and community support that many defendants don't have, as well as a solid job and relative financial security, Defendant engaged in criminal activity based seemingly on greed and a desire to exert power over those within his domain.  Accordingly, while the government acknowledges the support shown through these letters, it respectfully submits that they do not present a reason to vary downward from the applicable Guidelines range.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

For the foregoing reasons, the government recommends that the Court sentence Defendant to 63 months in prison, a three-year term of supervised release, $23,000 in restitution to B.L., and a $600 special assessment.

DATED: January 14, 2026                                Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney


/s/_____
ABRAHAM FINE
BENJAMIN KLEINMAN
Assistant United States Attorneys