RICHARD CEBALLOS (SBN 143782)
rceballos@ferronelawgroup.com
FERRONE LAW GROUP
4333 Park Terrace Dr., Ste. 200
Westlake Village, CA. 91361
Telephone: (805) 373-5900
Facsimile: (818) 874-1382

*Attorney for Defendant*
*Joseph Huffaker*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOSEPH HUFFAKER,<br><br>Defendant. | Case No: 3:21-CR-00374-MMC<br><br>**DEFENDANT JOSEPH HUFFAKER'S SENTENCING MEMORANDUM AND REQUEST FOR DOWNWARD VARIANCE** |

## INTRODUCTION

Mr. Huffaker stands before this Honorable Court convicted of conduct that betrays his oath as a police officer but is otherwise atypical of a life marked by public service. Mr. Huffaker was convicted by a jury of falsely holding himself out as a federal agent, participating in the extortion and seizure of marijuana from a single motorist, and later participating in the preparation of a falsified police report all under the direction of his superior, Sgt. Brendon Tatum. Mr. Huffaker accepts that this conduct for which he was convicted of was wrong and that, as a sworn police officer, he is held to the higher standard than ordinary citizens.

For the reasons below, the defense respectfully requests a downward variance of no more than 12 months of home confinement, followed by one (1) year of supervised release with tailored conditions (including occupational restrictions barring law-enforcement/security employment and financial monitoring). This sentence recognizes the seriousness of his conduct and breach of trust yet recognizes his involvement is atypical of a life otherwise lead and for which he would not have engaged in had it not been for his supervisor Brendon Tatum.

If the court, however, elects to sentence him to a term of imprisonment, Mr. Huffaker requests the court sentence him to a minimum-security prison close to his wife and children, and further that he be allowed to remain free of custody pending the appeal of his conviction in this case.

## OBJECTIONS TO THE OFFENSE LEVEL COMPUTATIONS

As reflected in the Addendum to the Presentence Report, the defense raised only two (2) objections.

The first objection is to the enhancement pursuant to USSG 2C1.1(b)(1) for the offense involving more than one extortion. As the Court is aware, Mr. Huffaker was convicted of extorting only victim B.L. The extortion charge involving victim E.F. (count 2) was dismissed by the government prior to the trial with the government conceding that Mr. Huffaker was not involved in that crime.

The probation department's conclusion that Mr. Huffaker was involved in more than one extortion was based simply upon their review of the trial testimony of Mr. Tatum. While it is true the enhancement need only be based upon a preponderance of evidence, the defense contends reliance on the trial testimony of Mr. Tatum is flawed as the probation department was not present when Mr. Tatum testified and therefore is unable to label his testimony as being truthful worthy of meeting the preponderance standard. Only this Court

is in the position to determine if Mr. Tatum's testimony met this standard of proof.

Accordingly, the defense contends that Mr. Tatum's testimony was so replete with lies and half-truths that it is nearly impossible to label his testimony as meeting the preponderance standard. Furthermore, the government offered no evidence beyond Mr. Tatum that Mr. Huffaker was involved in other extortions. And any reference to Mr. Timmins testimony is similarly flawed. For this reason, the defense asks this court to disregard and strike the two (+2) level enhancement pursuant to USSG 2C1.1(b)(1).

The second objection is to the enhancement pursuant to USSG 2C1.1(b)(2) and 2B1.1(b)(1)(D) for the value of the extortions being $52,000. As previously noted, Mr. Huffaker was convicted of only a singular count of extortion. That incident with victim B.L involved the seizing approximately 20 pounds of marijuana. Mr. Lutz testified at trial the value of the marijuana was "probably $20,000". (Lutz's testimony p.25)

However, the probation officer arrives at the $52,000 amount based solely on the testimony of Mr. Tatum and to a lesser extent Mr. Timmins. And as noted above, the probation officer's reliance on the trial testimony of Mr. Tatum and to a lesser extent Mr. Timmins is flawed because the probation officer was not present when these two individuals testified and therefore is unable to categorize their testimony as truthful worthy of meeting the preponderance standard. In fact, the government's own forensic expert, IRS agent Kendyl Tovey, did not find any evidence that corroborated the $52,000 figure when she reviewed Mr. Huffaker's financial records. She only found evidence of a portion of the amount received from the extortion of victim B.L. Therefore, the defense contends there should only be a four (+4) level enhancement instead of the six (+6) level enhancement contained in the PSR.

## BIOGRAPHICAL BACKGROUND OF JOSEPH HUFFAKER

Before this court stands a man convicted of egregious conduct. However, Mr. Huffaker is not a man whose life has been defined by such conduct. As noted in the PSR,

with the exception of a ticket for reckless driving when he was a teenager, he has led a rather exemplary life.

He married his college girlfriend, Tristin, whom he later encouraged and supported as she worked her way towards obtaining a bachelor and then masters degree. She is now a teacher. They have two children: Joseph Jeffrey Huffaker, age 18, and now a freshman at San Diego State University studying mechanical engineering, and Elissa Huffaker, age 15, a sophomore in high school. He lives with his family in a modest, three bedrooms, two bathroom home in Rohnert Park. The site visit by the probation officer noted the home was clean, adequately furnished, and consistent with his reported financial means.

During his career with the Rohnert Park Department of Public Safety, Joseph sustained numerous injuries as a result of his job as both a police officer and firefighter, including injuries to his hips, back and finger. He has had to undergo multiple surgeries as a result of these injuries. Nevertheless, he continues to experience pain and other lasting permanent issues as a result of these injuries. His doctors have advised him that his permanent disability rating for these injuries is approximately 35%.

After his resignation from Rohnert Park in 2019, Joseph obtained employment with PG&E as a senior engineering estimator. He remains employed there to this day, however it is unknown if he will be able to keep his job as a result of this conviction and any possible imprisonment.

**LETTERS OF SUPPORT ON BEHALF OF JOSEPH HUFFAKER**

Over a dozen and half individuals comprised of family, friends, co-workers, supervisors, and people in the community submitted letters of support on behalf of Mr. Huffaker. The large number of letters submitted on his behalf speaks volumes about the type of person Joseph Huffaker really is and not by the conduct that this case was focused on. All of them believe the charges Joe was convicted of do not reflect the man they have come to know through the years and even decades of knowing him.

Almost all of them attest to his being a good and devoted family man, someone who genuinely loves, cares, and provides for his wife and two children. Several of them noted that Joe's children are kind, respectful, intelligent, and well-mannered, a reflection of how they were both raised and taught by Joe and his wife. Several of these people have recognized his devotion as a family man so much so that one of them asked him to be the emergency contact for her children at school and daycare while another one asked him to be the godfather to her son.

Joseph's parents and wife attended every day of the trial, and they submitted letters on his behalf as well. None of them downplayed the seriousness of the charges against their son and husband. Instead, they spoke of his willingness to help out friends and family even starting at such a young age, whether it be tutoring a neighborhood boy struggling with math; helping a good friend who lost a brother in an auto accident; or helping lead and arrange a memorial for one of his friends who died by way of suicide. In addition, he has volunteered time and time again to help others who needed it most whether it be his father-in-law, when he needed a ride to get to his medical appointments or his mother-in-law, when her husband passed away, Joseph has consistently showed remarkable compassion and understanding.

And Joseph's compassion and willingness to help others was not restricted to just his family and friends. One person recalled an incident where Joseph was present at a restaurant when a stranger at another table experienced a medical emergency. Joseph acted quickly and relying on his training as a firefighter went to that person's aid and stayed with that person until medical aid arrived to take over. Another person recalled a different incident when on a family trip, Joseph witnessed a traffic accident involving a motorcyclist hitting a deer. Joseph stopped and rendered first aid to this person until help could arrive and take over.

And the letters of support Joseph received are not limited to his family and close friends. His supervisor at PG&E since 2020 wrote of Joseph's *professionalism, integrity,*

*and dedication….a true team player, always dependable, collaborative, and willing to go the extra mile to support colleagues and ensure the success of the team.*"

In short, Joseph is a man who has done everything we would expect a son, a husband, a father, a friend, a co-worker, and an employee to do. In fact, one can argue that Joe has gone above and beyond expectations. While not discounting the seriousness of the charges he was convicted of, Joe has had a positive impact on the lives of many people which extend well beyond his own family and close circle of friends.

Based upon the above, it seems pretty clear that Joe would not have engaged in this conduct without the encouragement of his supervisor Jacy Tatum. Of course, not only should Joe have turned down Tatum's offer to participate in the scheme to extort, but he should have immediately reported Tatum to his supervisors, including the chief of police. And in a perfect world, this should have put a stop to Jacy Tatum. But the Rohnert Park Department of Public Safety was far from perfect. In fact, the way this department was run from the commander level all the way to deputy chiefs and the director/chief of police himself, it would have been akin to blowing in the wind. The evidence at trial painted a picture of a department which had basically handed its keys to Sgt. Tatum and looked the other way as to what he was doing simply because he was bringing in so much money into the city by way of asset forfeiture. So even if Joe had reported Tatum to his supervisors, it likely would have likely gone nowhere, and he would have been labeled as a malcontent or worse a "snitch". And while this does not excuse Joe's decision to ultimately join in with Tatum, it does provide some context as to why he made such a poor decision.

## SENTENCE RECOMMENDATION FOR DOWNWARD VARIANCE

The defense respectfully urges this Court to impose a downward variance for Mr. Huffaker and sentence him to a term of no more than 12 months of home confinement. This recommendation takes into account that for the past five (5) years since he was first indicted, Mr. Huffaker has been subject to the court's restrictions. In addition, a downward

variance is not unusual for first-time, nonviolent public corruption cases with limited proceeds and short duration. Federal courts frequently impose sub-three-year terms, with many below guideline variances in recognition of collateral consequences and low recidivism risk. A sentence no more than 12 months would place this case squarely in that band and distinguish it from prolonged, armed, or six figure schemes.

In this case, Mr. Huffaker was convicted of a single incident, involving the taking of $20,000 in marijuana. And the evidence established that it was Sergeant Tatum, and not Mr. Huffaker who interacted with victim BL. Mr. Huffaker played a minor role in this extortion. Lastly, the evidence established that it was Sergeant Tatum who wrote the final draft of the fraudulent police report and not Mr. Huffaker. Accordingly, this falls within the parameters for downward variance.

In addition, as a former police officer, Mr. Huffaker is at heightened risk in prison. Courts have long recognized unusual vulnerability as a permissible variance consideration when supported by record facts. See Koon v. United States, 518 U.S. 81, 111–13 (1996).

## **CONCLUSION**

Mr. Huffaker stands humbly before this Court asking not for leniency but for understanding. He is not a bad man in the general sense of the words. Rather he is a man who made a horrible, even stupid mistake. He chose to forgo his oath as a police officer, his responsibilities as a son, a husband, and a father and instead he chose to follow the directions of his supervisor. He chose to do something he knew was wrong and against everything he believed and preached to his own children. And he knows there must be consequences for the decisions he has made. However, he prays this Court will weigh denunciation with proportionality. A measured sentence of no more than 12 months home confinement plus stringent supervision sufficiently punishes him and deters others while respecting § 3553(a)'s parsimony command.

1  This memorandum is being submitted on behalf of my client. However, if the court grants Mr.
2  Huffaker's Motion to Continue, he reserves the right to have his new counsel supplement or amend
3  this memorandum.

Dated: January 14, 2026

Respectfully submitted,
FERRONE LAW GROUP

*Richard Ceballos*

*Robert Baumann*

Richard Ceballos and
Robert Baumann
Attorneys for Defendant,
Joseph Huffaker

//
//

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

  I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is **4333 Park Terrace Drive, Suite 200, Westlake Village, California 91361**.

  On January 14, 2026 I served the foregoing documents described **DEFENDANT JOSEPH HUFFAKER'S MEMORANDUM AND REQUEST FOR DOWNWARD VARIANCE** on all interested parties in this action addressed as follows:

Abraham Harry fine
United Sates Attorney's Office
1301 Clay St. Ste 340S
Oakland, CA 94612-5224
Telephone: (415) 426-7200
Email: Abraham.fine@usdoj.gov

Attorneys for Defendant JOSEPH HUFFAKER

_   **BY U.S. MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, CA. in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

**X**   BY ELECTRONIC SERVICE: By electronically mailing a true and correct copy through Ferrone Law Group's electronic mail system from asavostyanov@ferronelawgroup.com to the email address(es) above. I did not receive within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

_   BY FEDERAL EXPRESS/OVERNIGHT MAIL:

**X**   STATE: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

  EXECUTED: January 14, 2026, at Westlake Village, California.

*DEANNA BERMEA*
-----------------------
Deanna Bermea