KAREN L. LANDAU, CSB # 128728
Law Office of Karen L. Landau
1966 Tice Valley Blvd., # 189
Walnut Creek, CA 94595-2203
(510) 501-2781
karenlandau@karenlandau.com
Attorney for Defendant Joseph Huffaker

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH HUFFAKER,<br><br>Defendant. | No.: 3:21-cr-00374-MMC<br><br>**DEFENDANT'S MOTION FOR NEW TRIAL**<br><br><br>DATE: April 15, 2026<br>TIME: 2:15 p.m.<br>Courtroom: Hon. Maxine M. Chesney |

Defendant Joseph Huffaker, by and through counsel, moves for a new trial on the basis that a principal government witness gave material false testimony. Because there is a reasonable likelihood that the false testimony affected the judgment of the jury, a new trial is required.

## I. Background

Following a five-day jury trial, Mr. Huffaker was convicted of five counts: conspiracy to commit extortion under color of law, in violation of 18 U.S.C. § 1951, a single substantive count of extortion under *id.,* conspiracy to obstruct justice by filing a false report, in violation of 18 U.S.C. § 1519, a substantive count of

1

obstruction in violation of *id.,* and one count of false personation, in violation of 18 U.S.C. § 912.

The principal evidence against Mr. Huffaker came from his former supervisor, Sgt. Brendon "Jacy" Tatum, who, by his own admission, had been extorting marijuana dealers and stealing their marijuana for years. Tatum had a long history of criminal behavior and was cooperating in hopes of obtaining a more lenient sentence. Tatum used his leadership position in the Rohnert Park Department of Public Safety (RPDPS)  to commit his crimes.

Tatum testified that he and Huffaker became frustrated after the RPDPS terminated its drug interdiction program. Tatum averred that Mr. Huffaker suggested stealing marijuana from traffickers using their interdiction skills. Exh. C: RT 648, *see also* 523-24.[1] Tatum said he and Mr. Huffaker engaged in illegal interdiction efforts four or five times during December, 2018, ending with the stop that occurred on December 18, 2017, which was charged a substantive violation of the Hobbs Act.

Tatum also provided significant testimony about the charged conspiracy to obstruct justice and substantive obstruction count, brought under 18 U.S.C. § 1519. The basis for the obstruction charge was the preparation and submission of a police report which contained various false statements concerning the circumstances of the stop and seizure as well as mistaken information which combined true information about the December 18, 2017, stop, with information regarding a December 5, 2017, stop which Tatum and Huffaker did not make.

Tatum testified that he began his effort to conceal the December 18, 2017, stop on December 19, 2017, when he booked some marijuana into evidence. RT 547-49. This was not the marijuana that he claimed was seized in the December 18, 2017, stop. Tatum entered the marijuana into evidence and identified Mr. Huffaker as the collecting officer. RT 549.

---

[1] The transcript citations are taken from the consecutively numbered trial transcript prepared by the court reporter. The transcript pages cited in this Motion are attached as Exh. C.

On February 13, 2018, Tom Allman, the Mendocino County Sheriff, called Tatum. Tatum said Allman complained that the Mendocino County Sheriff's Department was being blamed for a stop made by the RPDPS. RT 568. Tatum said he promptly called Mr. Huffaker and talked to him about the problem for 18 minutes. RT 569. Then, Tatum drove to Huffaker's home where he called their commander who authorized Tatum to send out a press release. RT 570. According to Tatum, Mr. Huffaker used his wife's computer to prepare a draft press release. RT 571. Tatum testified that he and Huffaker discussed what should be written. *Id.* Huffaker subsequently sent the draft press release from his wife's email to Tatum's personal email account. Exh. 157. Tatum then forwarded the email containing the draft to his RPDPS email. RT 573.

The next day, February 14, 2018, FBI Agent Jeremy Heinrich contacted Tatum and asked him for a copy of the press release and the police report. RT 577. He provided Tatum with the name and date of birth of the driver and the date of the stop. Tatum said he again spoke with Huffaker. RT 575. On February 15, 2018, Tatum received exhibit 180 from Huffaker: a draft of a proposed narrative regarding the stop. The information contained in the draft was general, containing the driver's name, the date of the stop and some truthful information regarding a the December 18, 2018, stop that Tatum and Huffaker made, including the type of vehicle.  It did not contain certain false statements present in the final report, including the false statements that Tatum and Huffaker were wearing full police uniforms or using a marked Rohnert Park police vehicle.

Tatum testified that he and Huffaker reviewed the final version before submitting it to the police department; then Tatum sent the document on to the FBI. Exh. 154; RT 587-90. Significantly, Tatum testified:

**Q.** Now, this document on the screen, this draft e-mail, this wasn't the final version of the police report you ultimately submitted; is that right?

**A.** No, it was not.

**Q.** Before you finalized, were some more details added to the police report?

**A.** Yes.

**Q.** And did you and Mr. Huffaker meet up in person to discuss adding those details?

**A.** We did.

**Q.** Can you describe that?

**A.** We met at the police department, went over this document and some final documents, some final facts, and then ultimately submitted the final document into the I/LEADS computer system.

RT 582. As this Court is aware, the final police report contained a number of false statements, including that Huffaker and Tatum were dressed in full police uniform and were driving a marked police vehicle. Exh. 194. The report also contained mistakes, namely that they had stopped Ezekial Flatten on December 5, 2017.

Tatum's testimony that he and Huffaker reviewed the final police report is false, as is his testimony that Huffaker was personally present at the station for the review.

On March 13, 2026, a private investigator interviewed Lillian Brooks, who was employed as a records clerk at the RPDPS. Ms. Brooks, now retired, had testified at the Internal Affairs hearing. Exh. A. Internal records showed that on February 20, 2018, she unlocked the report concerning the December 5, 2018, stop. After Tatum inserted a narrative, she relocked the report. Exh. A.

Ms. Brooks recalled the incident in which Tatum came to her and asked her to unlock a report so he could revise it. Exh. A. She said that Tatum came to the records unit and requested that she unlock one of his reports so he could make additions. Ms. Brooks recalled that Tatum was alone. *Id.* She did not recall seeing Officer Joe Huffaker with Mr. Tatum on this day in the Records Unit of the police

station. *Id.* Ms. Brooks also said that she had no recollection of seeing Huffaker at the police station at all that day. *Id.*

## II. This Court Should Grant Defendant Huffaker a New Trial.

A conviction obtained through use of false testimony, known to be false by the government, violates due process. *Napue v. Illinois,* 360 U.S. 268, 269 (1959). "To establish a *Napue* violation, a defendant must show (1) that the testimony was actually false, (2) that the government knew or should have known it was false, and (3) that the testimony was material, meaning there is a reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Holmes,* 129 F.4th 636, 662–63 (9th Cir. 2025) (cleaned up).

"The government's duty to correct perjury by its witnesses is not discharged merely because defense counsel knows, and the jury may figure out, that the testimony is false." *Clements v. Madden,* 112 F.4th 792, 802 (9th Cir. 2024) (quoting *United States v. LaPage,* 231 F.3d 488, 492 (9th Cir. 2000)). To the contrary, "[w]here the prosecutor knows that his witness has lied, he has a constitutional duty to correct the false impression of the facts." *Id.* (quoting *LaPage,* 231 F.3d at 492). The materiality standard is lenient: a conviction must be set aside "so long as the false testimony may have had an effect on the outcome of the trial—that is, if it in any reasonable likelihood could have affected the judgment of the jury." *Glossip v. Oklahoma,* 604 U.S. 226, 145 S. Ct. 612, 626–627 (2025) (cleaned up); *accord Clements v. Madden,* 112 F.4th at 800.

Here, Tatum testified falsely at Mr. Huffaker's trial at least as to at least one material matter. In his plea agreement, Tatum swore under penalty of perjury:

> On or about February 14, 2018, I got a call from a FBI agent, asking about the same stop that happened on December 5, 2017. The agent asked for the police report and the press release. There was no Incident/Investigation Report, no Property/Evidence Report, and no other documentation or body camera footage of the stop. I believe the FBI agent gave me the driver's name and date of birth, as I did not know it at the time.

5

> I told Huffaker about the call from the FBI agent, and we discussed preparing an incident report, using the facts associated with the December 18, 2017, seizure. On or about February 15, 2018, I had a number of calls with Huffaker between 2:39 and 4:58 about preparing an incident report. At approximately 5:41 p.m. Huffaker sent me a draft of the facts for the incident report at my personal email account, which I later forwarded to my work email account on February 20, 2018 at approximately 9:27 a.m. On or about February 20, 2018, at approximately 9:28 a.m., I falsified an Incident/Investigation Report regarding Victim 7's traffic stop and seizure on December 5, 2017.

Thus, in the plea agreement Tatum claimed that Mr. Huffaker sent him a draft of the facts for the incident report, and that he talked with Huffaker about the problem. Tatum swore, however, that he was the person who prepared the final false police report. *See* Tatum Plea Agreement at 11-12 (filed under seal). The Plea Agreement concluded that "Huffaker and I falsified this report for the undocumented stop …in order to conceal our conspiracy to extort marijuana…and to obstruct, influence and impede that [FBI] investigation." PA at 12.

At trial, however, Tatum told a different story. Tatum testified not only that he and Mr. Huffaker conferred about the drafting of a false police report around February 14, 2018, but that they met in person at the police station on February 20, 2018, where they went over and finalized the police report ultimately filed. RT 582. Tatum's latter story did not appear in his prior statements nor in his plea agreement. By the time Tatum arrived at his latest version in the middle of his trial testimony, defense counsel could not timely reconstruct the events of the day more than seven years prior and provide Mr. Huffaker with proof that he was nowhere near the police station on February 20. Defense counsel did not cross-examine Tatum about this testimony at all, instead examining him about his testimony that Mr. Huffaker assisted him in preparing the press release, which was inconsistent with both Tatum's Internal Affairs testimony, and a statement given to the FBI. RT 699-700.

6

Tatum's testimony was a surprise, because the discovery released to the defense prior to trial never indicated that Mr. Huffaker prepared the final report with Tatum. It certainly did not indicate that Huffaker met with Tatum at the police station before Tatum submitted the final report. If Tatum's trial testimony was to be believed, then Mr. Huffaker was an equal participant in the preparation of a false police report and fully intended to obstruct justice. This intent, in turn, proved not only guilt of the obstruction offense, but supported a conclusion that Huffaker was a full participant in the charged extortion, that he knowingly committed extortion under claim of official right. If not, Huffaker would have had no reason to participate in a coverup. Thus, Tatum's testimony about the false report bolstered the government's case on the extortion charges.

In fact, Tatum's trial testimony that he met with Huffaker in person at the police station where they conferred about the final report was false. First, as previously stated, Records Clerk Brooks has stated that Tatum came to her alone and revised the report. Exh. A. She did not recall seeing Huffaker at the station that day at all.

Tatum's trial testimony also is belied by discovery records concerning the report itself. The government introduced Exhibit 180, which was page one of the email that was sent from Huffaker's Rohnert Park email account to Tatum's personal gmail account. The content of Exhibit 180 was the draft report which, as previously stated was susceptible of an interpretation that the false statements were merely mistaken, as opposed to intentionally false. Exhibit 180 shows that it was sent from Huffaker's Rohnert Park email account to Tatum's personal gmail account at 5:41 p.m.

Another piece of discovery, however, GS 012321 -012322 (attached as Exhibit B) shows that Tatum forwarded the final version of the report from his personal gmail account to his personal gmail account on February 15, 2018 at 7:47:13 p.m. Exh. B.  The version of the report that Tatum sent to himself at 7:45 p.m. is identical to that which was inserted into the Rohnert Park records on

February 20, 2018, at 9:27 a.m., the time that Ms. Brooks unlocked the report so that Tatum could insert a narrative. Thus, the final version of the report existed in Tatum's email account five days before it was uploaded on February 20, 2018. The identity of the report contained in Tatum's gmail account and the report ultimately filed in the Rohnert Park system belies the notion that Mr. Huffaker had any role in amending the report. If Tatum already had the final version of the report, why would he need to confer with Huffaker about it?

In sum, the evidence from Ms. Brooks, combined with Exhibit B, shows that Tatum gave false testimony at trial. Had this evidence been available, it would have provided powerful impeachment by contradiction, because it would have showed that the witness lied to the jury. *See United States v. Castillo,* 181 F.3d 1129, 1132 (9th Cir. 1993). Impeachment by contradiction is permitted by Rule 607 of the Federal Rules of Evidence. *See United States v. Greenridge,* 495 F.3d 85, 99 (3d Cir. 2007).

Moreover, the government had the duty to correct Tatum's false testimony. It did not.

## III. The False Evidence Was Reasonably Likely to Affect the Judgment of the Jury.

This Court should grant the motion for new trial, because there is a reasonable likelihood that Tatum's false testimony affected the judgment of the jury. Furthermore, if the government had corrected Tatum's testimony as required, there is a reasonable likelihood that the correction would have affected the judgment of the jury. *Clements v. Madden,* 112 F.4th at 802.

The standard for materiality is considerably less demanding than other materiality standards on constitutional claims. *Clements v. Madden,* 112 F.4th at 802. Here, the false testimony was material, because there is a reasonable likelihood that it could have affected the judgment of the jury. *See Glossip v. Oklahoma*, 604 U.S. at 253; *Clements v. Madden,* 112 F.4th at 800.

8

Tatum's testimony bore directly on Mr. Huffaker's intent to obstruct undermining the convictions for conspiracy to obstruct justice and substantive obstruction. Moreover, the information that Tatum gave false testimony at trial undermines the government's entire case. Tatum was necessary to the government's case. While the government presented evidence that corroborated Mr. Huffaker's presence at the stop, and his role in preparing the drafts of the press release and report, Tatum's testimony was necessary to prove intent as to all of the charges.

It's also worth considering the probable impact of evidence showing that Tatum lied about Huffaker's probable role in the false report. First, such evidence impeached Tatum in a way different from prior inconsistent statements because it showed that he was lying at trial. While prior inconsistent statements allow the jury to infer that one of the witness's statements is false (either the earlier one or the current one), the evidence that Tatum lied during his trial testimony is particularly damaging. Evidence that a witness has lied at trial, before the jury assigned to assess his credibility, makes the witness unworthy of belief.

Second, Tatum's testimony that Huffaker participated in developing the false police report – immediately before it was filed – undermined the defense theory. The defense sought to persuade the jury that while Mr. Huffaker was present for the extortion, there was a reasonable doubt about whether he knowingly engaged in stealing marijuana for profit, intentionally committed false personation, or acted intentionally to obstruct justice. The defense sought to raise a reasonable doubt that Mr. Huffaker knowingly participated in or intended to obstruct the FBI investigation by preparing a false report.

The initial draft of the report was consistent with the notion that Mr. Huffaker prepared a false report by mistake. The draft recited truthful facts about the nature of the stop of the Mercedes, but mistakenly identified both the date of the stop and the name of the driver. In contrast, the filed police report differed materially from the draft forwarded from Huffaker's Rohnert Park email account

to Tatum's gmail account. The final report contained the plainly false statements that Tatum and Huffaker stopped a vehicle while wearing full police uniform and driving a marked vehicle. These false statements severely damaged the defense and the prosecution emphasized them in closing argument. RT 1148-49.

Based on the foregoing argument, defendant respectfully requests this Court to issue an order for a new trial on all counts.

DATED: March 18, 2026                               Law Office of Karen L. Landau

                                                   */s/ Karen L. Landau*
                                                   By: KAREN L. LANDAU

10