CRAIG MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

ABRAHAM FINE (CABN 292647)
BENJAMIN K. KLEINMAN (NYBN 5358189)
Assistant United States Attorneys

>       1301 Clay Street, Suite 340S
>       Oakland, California 94612
>       Telephone: (510) 637-3680
>       FAX: (510) 637-3724
>       Abraham.fine@usdoj.gov
>       Benjamin.kleinman2@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 21-CR-0374-MMC |
| Plaintiff, | **UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION FOR NEW TRIAL** |
| v. | Date:       April 15, 2026 |
| JOSEPH HUFFAKER, | Time:       2:15 p.m. |
| | Court:     Honorable Maxine M. Chesney |
| Defendant. | |

UNITED STATES' OPP. TO MTN. FOR NEW TRIAL   0
21-CR-0374-MMC

**INTRODUCTION**

The evidence presented at trial showed that in December 2017, Defendant Joseph Huffaker and Brendon Jacy Tatum conspired to pull over drivers suspected of possessing large amounts of marijuana, falsely told those drivers that they were federal agents working for the ATF, stole the drivers' marijuana, and sold the marijuana for personal profit. Two months later, when others in law enforcement and in the media started asking questions about their illegal activity, Defendant and Tatum obstructed justice by composing a false police report and then Tatum sent it to the FBI. The jury convicted Defendant on all pending counts after deliberating for less than two hours.

Now, eight months after the jury verdict, Defendant has moved for a new trial, alleging that Tatum gave materially false testimony at trial, and that the government knew or should have known his testimony was false, in violation of the Supreme Court's decision in *Napue v. Illinois*. Defendant's motion appears to be based solely on one statement from Tatum's testimony—that he met with Defendant in person at the Rohnert Park police station on February 20, 2018, and went over the false police report with Defendant before submitting it into the computer system. Defendant asserts this testimony was false because (1) the defense interviewed Lillian Brooks, a former Rohnert Park records clerk, who told a defense investigator she did not recall seeing Defendant in the records unit of the police station on February 20, 2018, and (2) Tatum's plea agreement, despite clearly describing how he and Defendant conspired to falsify the police report, did not explicitly say that he met with Defendant in person at the police station on February 20, 2018.

Defendant's motion fails at all three steps of the *Napue* framework. ***First***, Defendant has not shown that Tatum's testimony was false. That Brooks told the defense she did not recall seeing Defendant in the records unit of the police station eight years ago does not mean Defendant and Tatum did not meet somewhere at the police station that day. Similarly, that the plea agreement did not explicitly mention that Defendant and Tatum met in person at the police station on February 20, 2018, does not show that Tatum's testimony at trial about the meeting on that date was untrue. Nothing about the evidence Defendant has proffered contradicts Tatum's testimony about the February 20, 2018 events or shows that it was false. To the extent there are inconsistencies between Tatum's testimony and other evidence, the Ninth Circuit has squarely held that mere inconsistencies do not satisfy the falsehood

UNITED STATES' OPP. TO MTN. FOR NEW TRIAL   1
21-CR-0374-MMC

requirement under *Napue*.  Rather, as set forth below, a defendant must show that the testimony at issue was demonstrably false, which Defendant has not done here.

***Second***, even if Tatum's testimony about the events of February 20, 2018 was false (which it was not), Defendant has not shown that the government was aware of any falsity, as required under the second *Napue* prong.  Defendant merely asserts, in conclusory fashion, that the government had a duty to correct Tatum's allegedly false testimony, without anything more.  Such conclusory assertions are insufficient to establish this element.

***Third***, even if Tatum's testimony about the events of February 20, 2018 was false (which it was not), and even if the government was aware of such alleged falsity (which it was not), Defendant has failed to establish that the supposedly false testimony was material.  The evidence presented at trial overwhelmingly showed that Defendant and Tatum extorted marijuana from drivers in 2017, falsely identified as federal agents, and obstructed justice by writing a false police report.  Specific to the obstruction count, the evidence showed that Tatum and Defendant exchanged drafts of the false police report, talked on the phone during the relevant time period, and that Tatum submitted the false report into the computer system and then sent it to the FBI.  Defendant has proffered no new evidence to suggest Tatum's testimony regarding those key events was false.  Whether or not Defendant was physically present at the police station on the day Tatum submitted the report into the computer system is not material.  To the extent Defendant argues he could have used any inconsistency in Tatum's recollection of events for impeachment, Tatum had already been thoroughly impeached based on his own criminal conduct (including extortion, tax evasion, and obstruction), Tatum's admission that he lied under oath in both a 2017 deposition and the 2018 internal investigation, his admission that he allowed marijuana to be grown on his property in 2024, and his concession that he was cooperating with the government in the hopes of obtaining a lower sentence.

Finally, Defendant's motion is untimely to the extent it is based on anything other than the newly acquired statements from Brooks.[1]  Federal Rule of Criminal Procedure 33 sets forth that a motion for a

---

[1] After new defense counsel entered the case, the parties filed a stipulation to continue the sentencing and set a schedule for defense motions.  Dkt. No. 387.  When defense counsel asked for this schedule, the government assumed the stipulation referred to sentencing-related motions and the government in no way agreed to extend or waive any Rule 33 deadlines.

UNITED STATES' OPP. TO MTN. FOR NEW TRIAL  2
21-CR-0374-MMC

new trial must be filed within 14 days of the verdict unless it is based on newly discovered evidence, and that any failure to discover the evidence sooner was not based on defense counsel's lack of diligence. Here, the only proffered new evidence consists of the statements the defense obtained from Brooks. As such, to the extent Defendant's motion is based on evidence produced in discovery before trial (such as Tatum's plea agreement or emails introduced at trial) it is untimely.

## BACKGROUND

After hearing testimony from 13 witnesses over the course of a week, the jury convicted Defendant of all pending counts, which included extortion under color of official right, impersonating a federal officer, falsifying records in a federal investigation, and conspiracy to commit those offenses. The evidence presented at trial showed that Defendant and Tatum were police officers with the City of Rohnert Park's Department of Public Safety ("RPDPS"). In 2015 and 2016, Defendant and Tatum were part of the RPDPS interdiction team that was tasked with seizing illegal drugs along highway 101. Fine Decl., Ex A (Tatum direct testimony) at 5-16 (describing interdiction team operations). Tatum was the sergeant in charge of the interdiction team and Defendant was a member of that team. *Id*. Tatum testified that during this time period, he regularly stole marijuana from the RPDPS station and extorted marijuana from drivers, which he sold for personal profit. *Id*. at 16-22. The RPDPS interdiction team was terminated in January 2017 after California legalized the recreational use of marijuana and the Sonoma County District Attorney stated that the office would no longer pursue marijuana prosecutions. *Id*. at 24.

After interdiction operations ceased, Defendant and Tatum attempted to get interdiction operations back up and running, but RPDPS management rejected these attempts. *Id*. at 25-27. In December 2017, Defendant and Tatum conspired to pull over drivers suspected of possessing large amounts of marijuana, told those drivers that they were federal agents working for the ATF, seized the drivers' marijuana, and sold the marijuana through a dealer. *Id*. at 30-36. While Tatum testified that he and Defendant extorted several victims during December of 2017, the evidence at trial focused on the stop of B.L. on December 18, 2017. *Id*. at 46-53. On that date, Defendant and Tatum, wearing plain clothes, tactical vests, and driving in an unmarked black SUV, pulled over B.L. near the Sonoma-Mendocino border and identified themselves as ATF agents. Fine Decl., Ex. B (B.L. direct testimony) at

21. Defendant and Tatum told B.L. that he had two choices: he could give them his 23 pounds of marijuana (valued about approximately $1,000/pound) or they could seize the marijuana and "take him into the station." *Id*. at 40-41. When B.L. asked for identification, they asked if he "wanted to make a federal case out of it." *Id*. at 24. B.L. testified that he was in "shock" and thought he was being robbed. *Id*. at 23-24. Defendant and Tatum then extorted B.L.'s marijuana without providing any documentation. *Id*. at 25.

Defendant and Tatum committed multiple other extortions in December of 2017 following the same playbook. Ex. A at 36-38. Tatum testified at trial that he and Defendant committed three to four extortions during that month. *Id*. Tatum also testified that he and Defendant made $26,000 ($13,000 each) from their extortions in December of 2017, with the split of proceeds being 50% for William Timmins (the marijuana dealer), 25% for Tatum, and 25% for Defendant. *Id*. at 66. Furthermore, trial evidence and phone records showed that on December 6, 2017, Defendant, Tatum, and Timmins met by the side of the highway, and Tatum and Defendant loaded tens of pounds of marijuana into Timmins' car, which marijuana was the fruits of Defendant and Tatum's extortions from that day. *Id*. at 39-42.

Two months after their December 2017 extortions, when marijuana seizures by local police had been reported in the media and heat was starting to come down on Defendant and Tatum, they conspired to create a false police report and false press release regarding the December 18, 2017, extortion. Specifically, Tatum testified that on February 13, 2018, he received a call from the Mendocino County Sheriff asking Tatum to issue a press release taking credit for the marijuana stop and seizure that had taken place on December 18. *Id*. at 74-75. Tatum then called Defendant, who expressed that they were both scared and unhappy about the call from Mendocino, and proceeded to draft and issue a false press release about the stop. *Id*. at 76-82. Emails between Defendant and Tatum exchanging drafts of the false press release were introduced at trial. Fine Decl. Ex. C (Trial Ex. 157). The next day, Tatum received a call from an FBI agent asking for the police report from the incident described in the false press release. Ex. A at 83-84. On February 15, 2018, Tatum called Huffaker and they discussed drafting the false police report. *Id*. at 84-88. Phone records corroborated these calls. *Id*. In the midst of these calls, Defendant emailed Tatum an initial draft of the false police report. Fine Decl. Ex. D (Trial Ex. 180). Tatum testified that on February 20, 2018, he and Defendant met in person at the police

UNITED STATES' OPP. TO MTN. FOR NEW TRIAL  4
21-CR-0374-MMC

station, reviewed the false police report, and then submitted it into the computer system.  Ex. A at 88. That same day, Tatum sent the false police report and false press release to the FBI.  *Id*. at 94.

Approximately one month later, Tatum forwarded the false police report and false press release to Defendant as they prepared their testimony for the RPDPS internal investigation into the incident.  *Id*. at 95-96.  Tatum testified that he and Defendant coordinated to give false testimony during those proceedings and specifically acknowledged that he lied repeatedly during that internal investigation.  *Id*. at 97-102.  Phone records showing calls between Tatum and Defendant the night before their internal investigation hearings corroborated Tatum's testimony.  *Id*. at 98-100.

## ARGUMENT

### I.    Defendant Has Failed to Establish a *Napue* Violation

In *Napue v. Illinois*, 360 U.S. 264 (1959*)*, the Supreme Court held that a prosecutor violates a defendant's due process rights by eliciting or failing to correct materially false testimony.  To establish a *Napue* violation, a defendant must show each of the following: (1) that the testimony was actually false, (2) that the government knew or should have known that it was false, and (3) that the testimony was material, meaning there is a "reasonable likelihood that the false testimony could have affected the judgment of the jury."  *United States v. Renzi*, 769 F.3d 731, 751 (9th Cir. 2014).  As to the first element, "[m]ere inconsistencies or honestly mistaken recollections generally do not satisfy the falsehood requirement." *Id.*  Testimony is not "actually false" merely because the witness's recollection is "mistaken, inaccurate[,] or rebuttable."  *Henry v. Ryan*, 720 F.3d 1073, 1084 (9th Cir. 2013).  *See also United States v. Garrison*, 839 F. App'x 968, 982 (6th Cir. 2020) ("The statements must be 'indisputably false,' and 'mere inconsistencies' are not sufficient." (citation omitted)); *United States v. Bush*, 944 F.3d 189, 198 (4th Cir. 2019) ("Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony." (quotation omitted)).

Defendant's *Napue* motion focuses solely on the following testimony from Tatum regarding his meeting in person with Defendant at the Rohnert Park police station before submitting the false police report into the computer system:

> Q. Now, this document on the screen, this draft e-mail, this wasn't the final version of the police report you ultimately submitted; is that right?
>
> A. No, it was not.

Q. Before you finalized, were some more details added to the police report?

A. Yes.

Q. And did you and Mr. Huffaker meet up in person to discuss adding those details?

A. We did.

Q. Can you describe that?

A. We met at the police department, went over this document and some final documents, some final facts, and then ultimately submitted the final document into the I/LEADS computer system.

Ex. A at 88.

Defendant has failed to satisfy any of the three *Napue* elements.  First, as to falsity, nothing Defendant has proffered shows that Tatum's above-quoted testimony was actually false.  As an initial matter, Brooks' statements to the defense investigator that she did not recall seeing Defendant in the records unit of the police station on February 20, 2018, are not inconsistent with Tatum's testimony. Tatum did not testify that Defendant interacted with Brooks on that date, or that Defendant was the one who submitted the false report into the computer system, or that Defendant was physically present in the records unit of the police station at the time Tatum submitted the report.  Rather, as quoted above, Tatum testified generally that he and Defendant met at the police department and reviewed the report, which does not mean that Brooks would have necessarily seen Defendant in the records unit of the police station on that day.  Even if Tatum's testimony were rebuttable or inconsistent with Brooks' statements, such testimony would not be "actually false" merely because it was "mistaken, inaccurate[,] or rebuttable."  *Henry*, 720 F.3d at 1084; *see also United States v. Kabov*, 2023 WL 4585957 at *3 (9th Cir. July 18, 2023) (unpublished) ("At most, defendants show that Johnson's testimony was disputed or rebuttable, which is not enough to show that the government presented false evidence.")

Defendant's other arguments regarding falsity similarly fail.  That Tatum's plea agreement did not specifically mention meeting in person with Defendant at the police station does not mean his testimony about the meeting was false.  The plea agreement simply did not include that specific occurrence one way or another.  Rather, the plea agreement described in detail how Defendant and Tatum exchanged drafts of the false police report, discussed falsifying the report on the phone, that

UNITED STATES' OPP. TO MTN. FOR NEW TRIAL  6
21-CR-0374-MMC

Tatum ultimately submitted it into the system, and explicitly stated that "Huffaker and I falsified this report for the undocumented stop and seizure of marijuana from Victim 7 in order to conceal our conspiracy to extort marijuana from victims, and we did so knowing that the matter was being investigated by the FBI, and to obstruct, influence, and impede that investigation." Landau Decl., Ex. D (plea agreement) at 12. Nothing in the plea agreement renders Tatum's testimony false and there is no requirement that a cooperating witnesses' testimony be limited only to the facts contained in his plea agreement. Defendant also describes that on February 15, 2018, Defendant emailed Tatum an initial version of the false police report, they talked on the phone several times, and then Tatum emailed a revised version of the report to himself on the same date after speaking to Defendant on the phone. Dkt. No. 396 at 7-8 and Laundau Decl. Ex. B. The revised version that Tatum emailed to himself was close to (but not identical to) the factual narrative contained in the final version of the report Tatum submitted five days later. Again, nothing about this sequence of events is inconsistent with Tatum's testimony that he and Defendant met at the police department on February 20, 2018, went over the details of the final report (which were contained in the version Tatum emailed to himself), and submitted it into the computer system.

Second, to the extent Tatum's testimony was false (which it was not), Defendant has failed to show that the government knew of or should have known of any such purported falsity. Defendant's motion is completely silent as to this element, stating only that "the government had the duty to correct Tatum's false testimony. It did not." Dkt. No. 396 at 8. Such conclusory allegations regarding the government's knowledge of falsity are insufficient to establish this second element. *See United States v. Poynter*, 908 F.Supp.2d 30, 36-37 (D.D.C. 2012) ("Even if defendant is correct that Thomas testified falsely in Court, however, defendant has failed to establish either that the government knew the testimony was false or that the testimony was material to defendant's conviction. Defendant's conclusory allegations about the government's knowledge of falsity are therefore insufficient to warrant a new trial."); *United States v. De Nier*, 2018 WL 9816062 at *2, n.4 (C.D. Cal. Oct. 9, 2018) ("Defendant's conclusory assertion that the prosecution with their multiple meetings and interviews had to know the testimony was false, is not sufficient to show that the Government knew Schmidt's testimony was false.") (internal citation omitted); *United States v. Robinson*, 2021 WL 2209403 at *9

UNITED STATES' OPP. TO MTN. FOR NEW TRIAL  7
21-CR-0374-MMC

(D.D.C. May 31, 2021) (holding conclusory assertions as to falsity and government knowledge insufficient to make out a *Napue* claim).

As to Brooks' statements, the government did not interview Brooks during the investigation and while she testified in the Rohnert Park internal investigation, she did not say one way or another whether Defendant was present at the police station on February 20, 2018. *See* Fine Decl. Ex. D (transcript of Brooks internal investigation testimony). The transcript of Brooks' internal investigation testimony was produced to defense counsel in March of 2024, more than a year before trial. Fine Decl. at ¶ 7. Accordingly, there is nothing to suggest the government knew of any inconsistencies between her statements and Tatum's testimony and the defense had the same information as the government regarding Brooks' statements about the case. As to the plea agreement or Tatum's February 15, 2018 email to himself, those documents are not inconsistent with Tatum's trial testimony (as set forth above). Even if there were any inconsistency between those documents and Tatum's testimony, Defendant had those documents long before trial and had ample opportunity to impeach Tatum with those documents. As such, to the extent these documents are the basis for Defendant's motion, the motion is untimely because it was not filed within 14 days of the guilty verdict, as required by Rule 33 (*see* section II. below).

Third, even if Tatum's testimony about meeting Defendant at the police station was false (which it was not), and even if the government was aware of such alleged falsity (which it was not), Defendant has failed to establish that the supposedly false testimony was material. The evidence of Defendant's guilt as to the obstruction charges was overwhelming. As set forth above, emails and phone logs supported Tatum's testimony that he and Defendant first drafted a false press release about their extortions. Fine Decl. Ex. A at 74-82. The next day, after receiving an inquiry from the FBI, Tatum called Defendant and they discussed drafting the false police report and emailed versions of the report to each other. *Id*. at 84-88. Phone records and emails introduced at trial corroborated this series of events. *Id*. Approximately one month later, Tatum and Defendant coordinated to give false testimony during the internal investigation. *Id*. at 97-102. Whether Defendant was physically present at the police station on February 20, 2018, when Tatum submitted the false report into the computer system was immaterial to Defendant's guilt on the obstruction charges.

UNITED STATES' OPP. TO MTN. FOR NEW TRIAL  8
21-CR-0374-MMC

Defendant also argues that the supposed false testimony was material because defense counsel could have used it to impeach Tatum.  But this argument also fails, as Tatum was thoroughly impeached at trial about own criminal conduct (including extortion, tax evasion, and obstruction), Tatum's admission that he lied under oath in both a 2017 deposition and the 2018 internal investigation, his admission that he allowed marijuana to be grown on his property in 2024, and his concession that he was cooperating with the government in the hopes of obtaining a lower sentence.  Furthermore, the Court explicitly instructed the jury that Tatum's testimony should be viewed with "greater caution" given he was a cooperating witness.  Dkt. No. 336 at 12.  Courts have repeatedly held that such impeachment of a witness at trial can render other false testimony immaterial under *Napue*.  *See United States v. Alli*, 344 F.3d 1002, 1008 (9th Cir. 2003) (finding that a defendant was unlikely to have been harmed by the introduction of false evidence in part because the Court instructed the jury to treat the testimony with "greater caution than that of ordinary witnesses"); *United States v. Green*, 2008 WL 11411232 at *5-6 (N.D. Cal. March 19, 2008) (finding materiality element not met when cooperator gave potentially false testimony because "the jury already knew that Witness Newton came to the stand with unclean hands—he had already pled guilty to two felonies in the instant action and agreed to testify against Ms. Green for a sentence reduction."); *Untied States v. Shayota*, 2017 WL 1861889 at *27 (N.D. Cal. May 9, 2017) (finding the defendant failed to establish materiality of false testimony because the jury already had ample reason to discredit cooperator's testimony because court had instructed jury that he was a cooperating government witness).

## II.    **Defendant's Motion is Untimely**

Rule 33 makes clear that a motion for a new trial must be filed within 14 days of a guilty verdict unless it is based on newly discovered evidence.  *See* Fed. R. Crim P. 33.  For newly discovered evidence to trigger the extended deadline, the failure to discover the evidence sooner must not be the result of the defendant's lack of diligence.  *See United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc).  Here, Defendant has filed his motion more than eight months after the guilty verdict and the only potentially newly discovered evidence is the report regarding Brooks' statements to the defense.  To the extent Defendant's *Napue* motion is based on materials the defense had in its possession before trial (such as Tatum's plea agreement, emails about the false report, or Brooks' internal

UNITED STATES' OPP. TO MTN. FOR NEW TRIAL  9
21-CR-0374-MMC

investigation testimony) it is untimely, and the Court can deny Defendant's motion on that basis alone. *See, e.g., Untied States v. Love*, 2013 WL 1660415 at *8 (S.D. Cal. April 17, 2013) (rejecting *Napue* claim in part because it was not based on newly discovered evidence and the motion was not made within 14 days of the guilty verdict).

**CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court deny Defendant's motion for a new trial.

DATED: April 1, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

/s/_____
ABRAHAM FINE
BENJAMIN KLEINMAN
Assistant United States Attorneys

UNITED STATES' OPP. TO MTN. FOR NEW TRIAL   10
21-CR-0374-MMC