KAREN L. LANDAU, CSB # 128728
Law Office of Karen L. Landau
1966 Tice Valley Blvd., # 189
Walnut Creek, CA 94595-2203
(510) 501-2781
karenlandau@karenlandau.com
Attorney for Defendant Joseph Huffaker

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>    v.<br><br>JOSEPH HUFFAKER,<br><br>                    Defendant. | Case No.: 3:21-cr-00374-MMC<br><br>**DEFENDANT'S SENTENCING MEMORANDUM**<br><br><br>DATE: April 15, 2026<br>TIME: 2:15 p.m.<br>Courtroom: Hon. Maxine M. Chesney |

# DEFENDANT'S SENTENCING MEMORANDUM

# Table of Contents

I.  Procedural Background ..................................................................................... 3

II.  The Applicable Guidelines............................................................................... 3

  A. This Court Should Impose a Four, Rather Than a  Six-Level Upward
  Adjustment for the Benefit Received. ....................................................... 3

  B. This Court Should Not Impose a Two-Level Upward Adjustment for More
  than One Extortion, Because the Government's Evidence is Insufficient............ 6

III. Applicable Downward Adjustments ................................................................. 7

  A. This Court Should Reduce Mr. Huffaker's Offense Level by Two for a Minor
  Role in the Offense. .................................................................................... 7

  B. Zero-Point Offender .............................................................................. 10

  C. Guideline Calculation............................................................................ 11

IV.  This Court Should Vary Downward from the Advisory Guideline Range. ...... 11

  A.  Mr. Huffaker's History and Character Strongly Support a Noncustodial
  Sentence. .................................................................................................. 12

  B. The Pending Guideline Amendments............................................................ 14

V. The Minimally Sufficient Sentence is One of Probation, with Home
Confinement and Community Service as Conditions.  Alternatively, a Split
Sentence of Prison and Home Confinement Will Accomplish the Goals of 18 U.S.C.
§ 3553(a). .................................................................................................. 15

# Table of Authorities

**Cases**

*Esteras v. United States*, 606 U.S. 185 (2025) ........................................................... 11

*Pepper v. United States,* 562 U.S. 476 (2011) ............................................................ 13

*Tapia v. United States,* 564 U.S. 319 (2011)............................................................. 11

*United States v. Booker,* 543 U.S. 220 (2005) ........................................................... 11

*United States v. Lucas,* 101 F.4th 1158 (9th Cir. 2024 (en banc) ............................. 4

*United States v. Rodriguez,* 44 F.4th 1229 (9th Cir. 2022) ........................................ 8

*United States v. Ruiz-Apolonio,* 657 F.3d 907 (9th Cir. 2011) ................................. 11

*Williams v. New York,* 337 U.S. 241 (1949) .............................................................. 11

**Statutes**

U.S.S.G. §2B1.1(b)(1) .................................................................................................. 3

U.S.S.G. §2C1.1 ........................................................................................................... 3

U.S.S.G. §2C1.1(b)(2) .................................................................................................. 3

U.S.S.G. §2C1.1(b)(3) .................................................................................................. 3

U.S.S.G. §3B1.2 ........................................................................................................... 8

U.S.S.G. §3B1.2, cmt. 3(A) ........................................................................................ 8

U.S.S.G. §4C1.1(a) & (b) ........................................................................................... 10

# DEFENDANT'S SENTENCING MEMORANDUM

Defendant Joseph Huffaker is scheduled to be sentenced by this Court on April 15, 2026.  For the following reasons, defendant respectfully requests this Court to sentence him to a term of three years probation, with home confinement and community service as conditions.  Such a sentence will best serve the goals of sentencing as articulated in 18 U.S.C. § 3553(e).

Joseph Huffaker began work for the Rohnert Park Police Department as a reserve officer in 2010. In June, 2012, he was hired full-time.  Between 2010 and 2017, Mr. Huffaker was employed as a firefighter and police officer without incident.  During his career with the Rohnert Park Department of Public Safety, Mr. Huffaker sustained numerous injuries as a result of his job as both a police officer and firefighter, including injuries to his hips, back and finger. He has undergone multiple surgeries as a result of these injuries. He continues to experience pain. His doctors have advised him that his permanent disability rating for these injuries is approximately 35%.

Mr. Huffaker married young, and other than the present conduct, led a responsible and law-abiding life. Before and during his tenure at RPDPS, Mr. Huffaker successfully supported this family, along with his wife, who is employed as a schoolteacher. Mr. Huffaker also supported his wife in her successful efforts to obtain a Master's Degree. They live within their means and have no signs of unexplained wealth.

The offense conduct in this case occurred over a two-week period of time, during which Mr. Huffaker and his then-supervisor Sgt. Jacy Tatum, conspired to steal marijuana from persons who were engaged in transporting it.  Subsequently, he participated in attempting to coverup the wrongdoing, by assisting Tatum in preparing a fraudulent press release and police report. Mr. Huffaker's conduct destroyed his law enforcement career as well as his career in firefighting.

Nonetheless, he promptly found alternative employment and has been working for PG&E for almost seven years.

Mr. Huffaker is devoted to his family and is uniformly described as an excellent and devoted parent. At the present time, his son is attending college, while his daughter is a sophomore in high school. His friends and family describe him as reliable and committed to others. Joshua Lindsey, a brother-in-law, described an incident in which during a family trip, they witnessed a motorcyclist be thrown from his motorcycle after hitting a deer. Mr. Lindsey explains:

> Joe happened to be driving in the opposite direction and witnessed the incident and was the first to respond. He immediately rendered aid, using the training and experience from his law enforcement background to ensure the motorcyclist was safe and stable until emergency responders arrived.

Another writer recalled an incident where Joseph was present at a restaurant when a stranger at another table experienced a medical emergency. Mr. Huffaker relied his training as a firefighter and went to that person's aid, remaining there until medical personnel arrived. Letter of A. Lindsey. Mr. Huffaker goes out of his way to support his family and friends in times of need. *See* Letters of Amy Pastryk, Holly Solari, Matt Solari, and Bryce Fraser. In short, Mr. Huffaker's life has been focused on service: to his family, friends, and the public.

The government returned an indictment against Mr. Huffaker in 2021, more than three years after the offense conduct in this case. Since indictment, he has been on pretrial release, and has fully complied with all conditions. The conduct in this case occurred over eight years ago.

As is explained further below, Mr. Huffaker's history and character and the circumstances of the offense strongly support imposition of a probationary sentence, below the guideline range.

3:21-cr-00374-MMC
Defendant's Sentencing Mem.                    2

# I.  Procedural Background

Following a jury trial, Mr. Huffaker was convicted of five counts: conspiracy to commit extortion under color of law, in violation of 18 U.S.C. § 1951, a single substantive count of extortion under *id.,* conspiracy to obstruct justice by filing a false report, in violation of 18 U.S.C. § 1519, a substantive count of obstruction in violation of *id.,* and one count of false personation, in violation of 18 U.S.C. § 912. The principal evidence against him came from his former supervisor, Sgt. Brendon "Jacy" Tatum, who, by his own admission, had been extorting marijuana from dealers in the Sonoma and Mendocino counties for several years.[1] In contrast, Mr. Huffaker was charged with and convicted of participating in a conspiracy orchestrated by Tatum for two weeks, between December 5, 2017, and December 18, 2017.

# II.  The Applicable Guidelines

Mr. Huffaker agrees that the base offense level is 14. U.S.S.G. §2C1.1. Mr. Huffaker also agrees that the four-level upward adjustment under §2C1.1(b)(3) is applicable. Mr. Huffaker also agrees that he is subject to a two-level upward adjustment for obstruction of justice.

Mr. Huffaker objects, however, to two of the proposed upward adjustments, for more than one extortion and for the value of the benefit received as exceeding $40,000. Neither adjustment is supported by a clear preponderance of reliable evidence, as explained below.

### A. This Court Should Impose a Four, Rather Than a  Six-Level Upward Adjustment for the Benefit Received.

The probation officer recommended that this Court impose a six-level upward adjustment pursuant to §2C1.1(b)(2) and §2B1.1(b)(1)(D) for the value of the benefit obtained from the extortion, estimating the value as $52,000. PSR at 6,

---

[1] Mr. Tatum admitted to obtaining approximately half a million dollars during 2016. Given that he began his activities earlier, he likely obtained much more.

8. In reaching this conclusion, the probation officer relied on the testimony of Timmins and Tatum. Tatum testified that he received approximately $27,000 from Timmins and he gave Mr. Huffaker about half, approximately $13,000. Exh. B: RT 560-61. The probation officer reasoned that if Tatum received $13,000, and that figure was 25% of the total, then the total value of the extorted marijuana was $52,000. PSR at 6.

The six-level upward adjustment is not supported by a clear preponderance of reliable evidence. *United States v. Lucas,* 101 F.4th 1158, 1162-63 (9th Cir. 2024 (en banc). The flaw with the probation officer's calculation lies with its dependence on Tatum's testimony that he paid Huffaker $13,000.

Tatum claimed to have given Mr. Huffaker approximately $13,000 and said that Huffaker told him that he deposited the cash with other monies he had received from insurance payments. Exh. B: RT 560-62. And, Mr. Huffaker did make a deposit of $16,932.50 on February 14, 2018, that consisted of a large workers' compensation check and approximately $7,000 cash. Exh. B: RT 802. Tatum also pointed to Mr. Huffaker's purchase of a custom rifle, which cost slightly over $13,000 with accessories, as evidence of the payment. Exh. B: RT 564-65.

Other evidence undermines the inference that the $7,000 cash came from a larger cash payment of $13,000. The IRS agent who evaluated the bank deposits conceded that the total checks deposited into Huffaker's account were approximately $7,000 less than the total monies he received from workers' compensation insurance checks. Exh. B: RT 804-06. IRS Agent Tovey was able to document a number of checks that Mr. Huffaker cashed. *Id.* The missing $7,000 is the same amount as the $7,000 cash deposit made on February 14, 2018. Thus, the financial analysis does not convincingly corroborate Tatum's testimony that he gave $13,000 in cash to Huffaker.

3:21-cr-00374-MMC
Defendant's Sentencing Mem.                    4

Furthermore, Tatum's bank records undermine his claim that he gave Mr. Huffaker $13,000 in cash because the records show Tatum himself deposited substantially more than $13,000 in the period around December 2017. Tatum's bank records thus support an inference that whatever funds Tatum obtained from the extortion, Tatum kept.

It was undisputed that Tatum personally made cash deposits and also regularly had his wife deposit cash into her account (always under $10,000 to avoid a currency transaction report). Mrs. Tatum's bank records show three cash deposits made in December 2017 around the time of the charged conduct: $5,000 on December 14, 2017, $7,000 on December 20, 2017, and $7,000 on December 26, 2017, for a total of $19,000. Exh. A-1-2, A-5-6, A-8, A-13. On January 30, 2018, there was an additional cash deposit of $9,000 into her account. Exh. A-10, A-16. On March 6, 2018, another $9,500 in cash was deposited into her account. Exh. A-18, 21. The grand total for the period surrounding the claimed December 2017 extortions is approximately $37,500. At the time, Tatum's source for cash was William Timmins, his marijuana broker. Timmins did not testify about how much money he gave to Tatum from transactions occurring in or around December, 2017.

Kassie Tatum's cash deposits undermine Tatum's testimony that he gave Mr. Huffaker approximately $13,000 around January 2018. Tatum and Timmins both admitted that they split the money obtained from selling the stolen marijuana. Tatum claimed that he gave half of his share to Huffaker, or 25% of the total. Tatum also claimed that after the December 18, 2017, stop, he ceased his extortionate activities. If so, then the $37,500 deposited between December 2017 and March 2018, was the result of the December activity. Tatum claimed that he had stopped extorting and stealing marijuana between the time in which the interdiction program ended at the beginning of 2017 and December 2017, strengthening the inference that the aforementioned cash came from Tatum's

3:21-cr-00374-MMC
Defendant's Sentencing Mem.                    5

December 2017 activities. But Tatum's cash deposits dwarf the amount he claimed to have given to Mr. Huffaker, let alone the $7,000 cash deposited with the workers' compensation check on February 14, 2018.

The discrepancy between Tatum's testimony about what monies he gave to Mr. Huffaker, and the cash deposits cast doubt on the conclusion that the value of the "benefit" taken was $52,000. At a minimum, because the bank records undermine Tatum's testimony that he gave Huffaker $13,000 in cash, the records show that $52,000 was not reasonably foreseeable to Mr. Huffaker. Tatum's unreliable testimony does not provide a preponderance of reliable evidence to support an upward adjustment of six levels. Mr. Huffaker may well have received no financial compensation for his participation in the extortionate activity. Moreover, even in the context of a conspiracy, the total amount must be reasonably foreseeable to the defendant.

Accordingly, rather than rely on Tatum's testimony, this Court should adopt the value of the marijuana taken as that testified to by Barron Lutz, $20,000. *See* RT 406, 418. That amount corresponds to an upward adjustment of four levels. U.S.S.G. §2B1.1(b)(1)(C).

### B. This Court Should Not Impose a Two-Level Upward Adjustment for More than One Extortion, Because the Government's Evidence is Insufficient.

The probation officer recommended that this Court impose a two-level upward adjustment for more than one extortion. PSR at 8. This Court should decline to impose the two-level upward adjustment, because the adjustment is not supported by a clear preponderance of reliable evidence.

Here, the principal event about which the government presented evidence concerned the stop of December 18, 2017. Jacy Tatum, the government's central witness, testified about this event, as did the victim, Barron Lutz. Mr. Huffaker admitted that he was present at the event.

The evidence supporting a conclusion that Mr. Huffaker engaged in more than one extortion came primarily from Jacy Tatum who testified that Huffaker had participated in extorting marijuana 4-5 times while conducting fake interdictions. Tatum testified regarding one particular event, claiming that he and Huffaker were conducting "interdictions" on the Hwy 101 corridor. Tatum said they had seized so much marijuana that he called his partner, William Timmins, to meet them and pick up some of the marijuana. Timmins recalled such an event, and testified that Huffaker helped load garbage bags of marijuana into Timmins' vehicle. Telephone records also showed that Huffaker's telephone was in the Cloverdale area of Hwy 101.

Notwithstanding this testimony, the Court should not apply the two-level upward adjustment for more than one extortion. Tatum is not a credible witness: he changed his testimony frequently. Tatum lied repeatedly, in his Internal Affairs testimony, and even to the FBI after he began cooperating. Tatum omitted the identity of Timmins, the person to whom he provided marijuana to be sold, until 2023, after cooperating from 2021 going forward. While Timmins confirmed Huffaker's presence, he too suffered from a lack of credibility, only agreeing to testify after he was compelled to do so by the government's grant of immunity. Moreover, Timmins only confirmed a single transfer where Mr. Huffaker was present. Exh. B: RT 877. He said there "might have been two. I—again, I'm drawing a blank. But it wasn't a lot." *Id.*

# III. Applicable Downward Adjustments

### A. This Court Should Reduce Mr. Huffaker's Offense Level by Two for a Minor Role in the Offense.

U.S.S.G. § 3B1.2 provides for a reduction in the offense level when the defendant was a minimal or minor participant in any criminal activity. The adjustment is applicable when the participant is less culpable than the other

participants and substantially less culpable than the average participant. U.S.S.G. §3B1.2, cmt. 3(A); *see United States v. Rodriguez,* 44 F.4th 1229, 1233 (9th Cir. 2022). The determination whether a participant's role was minor is not dependent on whether the defendant performed an essential or indispensable role. U.S.S.G. §3B1.2, cmt. 3(C).

The Commission has identified multiple factors to be considered in evaluating whether a defendant is a minor participant:

(i) the degree to which the defendant understood the scope and structure of the criminal activity;

(ii) The degree to which the defendant participated in planning or organizing the criminal activity;

(iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv) the nature and extent of the defendant's participant in the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v) the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. §3B1.2.

Mr. Huffaker was substantially less culpable than the other participants in the offense, Jacy Tatum and William Timmins, and less culpable than the average participant. While Mr. Huffaker likely understood the scope and structure of the criminal activity, there is a lack of evidence that he planned or organized it. Tatum conceived of and carried out the extortion in the first instance. While he testified that Huffaker had proposed the idea of stealing marijuana from drivers, this testimony is not credible. Tatum had been stealing marijuana and engaging in extortionate conduct for years before Mr. Huffaker became involved. Indeed, Tatum admitted to engaging in extortion since at least 2015, earning

approximately half a million dollars from extortionate activities in 2016 alone. He was the person who had brokers to dispose of the marijuana for a share of the earnings. Tatum stole and sold marijuana for years, all the while deceiving others in the police department. In contrast, Mr. Huffaker was involved for two weeks, between December and 18, 2017. Thus, while the first factor weighs against a minor role adjustment, the second supports application of the minor role adjustment.

As to the third factor, while Mr. Huffaker had decision-making authority, that authority was constrained by Tatum, who was Huffaker's sergeant and supervisor. Tatum outranked Huffaker both during interdiction and thereafter; he also certainly had more authority in the department. Tatum not only was one of the few sergeants, he also was highly regarded within the department because of the success he had in asset forfeiture, which arose out of his interdiction activities.[2] His activities allowed him both to advance his position within the department and steal marijuana to be sold by unindicted conspirators.

The fourth factor also supports application of the mitigating role adjustment. Tatum was the person who organized the extortionate activity: he had the connections to dispose of the marijuana. Tatum first disposed of stolen marijuana through his uncle, Joseph Porcaro. Then, after they had a disagreement, Tatum used his longtime friend William Timmins to sell the stolen marijuana. The government did not present convincing evidence that Mr. Huffaker engaged in planning the conspiracy, or whether he simply went along with Tatum's suggestions. Thus, the factor concerning the acts committed by the defendant weighs in favor of a reduction for minor role.

Fifth, Mr. Huffaker received minimal monetary benefit from the offense conduct. Even if Tatum paid Huffaker $13,000, this amount pales in comparison to the cash deposited into Mrs. Tatum's accounts during December 2017, and

[2] Tatum had seized over 3,000 lbs of marijuana, and $2.8 million in cash. Exh. B: RT 618.

3:21-cr-00374-MMC
Defendant's Sentencing Mem.                9

January and March, 2018. *See* Exh. A. Moreover, Tatum profited substantially from his crimes for years, while Huffaker did not. While Tatum claimed that he gave Huffaker some cash from the December 18, 2017, incident there were no unexplained cash deposits into Huffaker's accounts. Exh. B: RT 804-06.

Furthermore, this Court should consider the culpability of unindicted co-conspirator William Timmins. Timmins admitted that he knew Tatum was stealing marijuana from drivers through interdiction, but participated in the conspiracy by disposing of the marijuana. Exh. B: RT 868-69. Timmins admitted that he sold somewhere between 500-1,000 pounds of marijuana for Tatum between 2015 and the beginning of 2017. Exh. B: RT 874-76. For his participation, Timmins earned 50% of the monies earned from selling marijuana. Given that Timmins split the proceeds evenly with Tatum, and Tatum admitted earning approximately $500,000 from the sale of stolen marijuana, it seems likely that Timmins earned approximately the same sum. Timmins admitted he could have sold over $1 million worth of marijuana for Tatum. Even if Huffaker netted $13,000 from extortion, which we do not concede, that sum pales in comparison to the amounts obtained by Tatum and Timmins, the latter of whom was granted immunity.

In sum, Joseph Huffaker was substantially less culpable than either the average participant in the offense and the actual participants in the offense. This Court should grant a two-level reduction for a minor role in the offense.

### B. Zero-Point Offender

The probation officer has recommended that Mr. Huffaker receive a two-level downward adjustment pursuant to U.S.S.G. §4C1.1(a) & (b). PSR at 8. Defendant concurs that this adjustment should be applied.

3:21-cr-00374-MMC
Defendant's Sentencing Mem.                 10

### C. Guideline Calculation

If the guidelines are calculated in the manner suggested herein, without the adjustment for more than one extortion, a four-level upward adjustment for the value of the benefit obtained, and a two-level downward adjustment for minor role, then Mr. Huffaker's adjusted offense level is 20. The corresponding guideline range is 33-41 months.

## IV.  This Court Should Vary Downward from the Advisory Guideline Range.

The probation officer has recommended a downward variance from the guidelines as calculated in the presentence report to 24 months (from a calculated guideline range of 51-63 months), recognizing the greater culpability of cooperating defendant Jacy Tatum. This Court should vary downward for a number of reasons, but to a greater extent than recommended by the probation officer.

"The punishment should fit the offender and not merely the crime." *Williams v. New York,* 337 U.S. 241, 247 (1949). 18 U.S.C. § 3553(a) provides the factors that this Court must consider in imposing sentence, including the nature of the offense and the character of the offender, the need to protect the public, and deterrence.  *Tapia v. United States,* 564 U.S. 319, 325 (2011).  "These four considerations—retribution, deterrence, incapacitation, and rehabilitation—are the four purposes of sentencing  generally." *Id.*; *see also Esteras v. United States*, 606 U.S. 185, 191-192 (2025).

The Court must, of course, consider the Sentencing Guidelines, but the guidelines are not mandatory. *United States v. Booker,* 543 U.S. 220, 245-46 (2005). Rather, courts have broad discretion to vary from the guidelines on a variety of grounds. A proposed guideline amendment provides one such recognized basis for variance. *See United States v. Ruiz-Apolonio,* 657 F.3d 907, 917 (9th Cir. 2011). Courts should consider proposed guideline amendments, even when those

proposals have not yet taken effect. In this case, the proposed guideline amendment combined with Mr. Huffaker's history and character and the disparate culpability of codefendant Jacy Tatum support a significant downward variance to a noncustodial sentence.

## A. Mr. Huffaker's History and Character Strongly Support a Noncustodial Sentence.

As this Court is aware, Mr. Huffaker has no criminal history. By all accounts, he was an exemplary officer -- and person -- until December, 2017, when for about two weeks, he engaged in extortionate conduct. Importantly, his conduct was committed with his supervisor and sergeant. While the two men may have been friends, that friendship does not negate Tatum's supervisory role. Tatum was well-respected in the RPDSS and had considerable authority.[3] Tatum also was the person who had the connection for selling the marijuana. It seems likely that the conduct would not have occurred without Tatum. Huffaker's conduct was aberrant, a deviation from an otherwise law-abiding life.[4]

Mr. Huffaker's obstructive conduct, too, was committed with and under Tatum's authority. Tatum was the person contacted by the Mendocino County Sheriff, which provided the germination of the false press release. Tatum also was the person contacted by FBI agent Heinrich which provided the catalyst for preparing the false police report. While Mr. Huffaker participated in preparing the false press release, which was used as a draft for the false police report, Tatum's testimony that they finalized the false report together is false. But, even if Tatum testified truthfully, his supervisory status mitigates Huffaker's conduct.

---

[3] Tatum's testimony that Huffaker came up with the idea of stealing marijuana is not credible, given that Tatum had been stealing and reselling marijuana at least two years.

[4] Under former versions of the Sentencing Guidelines, aberrant conduct constituted a basis for a downward departure from the Guidelines, even when they were treated as mandatory.

3:21-cr-00374-MMC
Defendant's Sentencing Mem.                    12

Next, Mr. Huffaker's character supports a downward variance. He is a devoted father and husband. The character letters submitted by friends and family uniformly praise his parenting skills. Exh. C. He has provided assistance and support to others, primarily to his family members, but also to an accident victim who he merely came across. *Id.*

Mr. Huffaker's post-arrest conduct also supports a downward variance. A defendant's post-arrest conduct "sheds light on the likelihood that he will engage in future criminal conduct, a central factor that district courts must assess when imposing sentence." *See Pepper v. United States,* 562 U.S. 476, 490-91 (2011). After his law enforcement and firefighting career was permanently ended by the offense, he promptly obtained new employment. He has been employed by PG&E for over six years. He has fully complied with all pretrial conditions of release. His conduct may fairly be considered as post-offense rehabilitation, which is a recognized basis for a downward variance.

Further, if Mr. Huffaker is incarcerated, he is unlikely to be reemployed by PG&E. PSR at 12. As this Court is aware, it is very difficult for persons with felony convictions to find employment. Mr. Huffaker recognizes that he has been fortunate to retain his employment after conviction, and would greatly appreciate the chance to remain working. The potential permanent loss of employment, too, supports a downward variance.

Finally, the statutory factors of public safety and deterrence, which this Court must consider, do not require a custodial sentence.[5] Mr. Huffaker's conduct during his more than six years of pretrial release shows that he does not need to

---

[5] This Court may wish to consider the types of sentences imposed on other police officers convicted of crimes. One judge in this district sentenced former Antioch Police Department officer Morteza Amiri to 84 months for violating the civil rights of persons he arrested. *United States v. Amiri,* N.D. Cal, 23-cr-269-JSW. Amiri's conduct was horrific: he set his K-9 on victims who were badly bitten, falsified police reports, and bragged about it to other officers. Yet, the government urges a sentence of 63 months here, only 21 months less than Amiri received.

be deterred from future illegal behavior. 18 U.S.C. § 3553(a)(2)(B). Public safety is not a factor in this case. 18 U.S.C. § 3553(a)(2)(C). Mr. Huffaker has no history of violence or threats, in this case or otherwise.

### B. The Pending Guideline Amendments

Under the current guideline manual, a defendant who has an offense level of 20 and a Criminal History Category of I, falls into Zone D and is therefore presumptively ineligible, absent a variance, for a probationary sentence. A defendant who has an offense level of 26, the level as calculated by the probation officer here, also clearly falls into Zone D. Importantly, however, the Sentencing Commission has proposed a significant change to the zones in the sentencing table. The Commission's proposed amendment places a Criminal History Category I offender into Zone B if the offender's adjusted guideline range carries at least four months, but not more than 46 months' imprisonment. A first-time offender will fall into Zone C, allowing for a split sentence, if the guideline range has a minimum of 51 months but not more than 87 months.

The guideline proposal recognizes that a non-custodial sentence serves a punitive purpose and can provide adequate punishment. *See Esteras v. United States,* 606 U.S. 185, 196 (2025). The proposal acknowledges that it may be appropriate to allow for  non-custodial sentences in a broader scope of cases, particularly for first-time offenders.

Regardless whether this Court adopts the offense level as calculated by the probation officer, or accepts some of the defendant's arguments, under the proposed amendments, Mr. Huffaker should be considered for a probationary sentence.

## V. The Minimally Sufficient Sentence is One of Probation, with Home Confinement and Community Service as Conditions.  Alternatively, a Split Sentence of Prison and Home Confinement Will Accomplish the Goals of 18 U.S.C. § 3553(a).

Defendant respectfully requests this Court to impose a sentence of three years probation, with home confinement and community service as conditions.

A sentence of three years probation, with one year of home confinement as a condition, plus 500 hours of community service, would adequately punish Mr. Huffaker, afford adequate deterrence, and consider the nature of the offense and the history and character of the offender.  A probationary sentence would enable Mr. Huffaker to maintain employment and to continue supporting his son, who is a college student, and his daughter, who is in high school.

Lastly, if this Court determines that Mr. Huffaker should serve a sentence in the Bureau of Prisons, he respectfully requests a judicial recommendation for a designation to FCI Lompoc, specifically to the Federal Prison Camp at Lompoc, California.[6]  Mr. Huffaker will qualify for a camp placement, because he will have less than 10 years to serve, and no public safety factors. Most importantly, Lompoc is the facility closest to his family which will enable his wife and children to visit.

Law Office of Karen L. Landau, P.C.

DATED: April 8, 2026

*/s/ Karen L. Landau*
KAREN L. LANDAU

---

[6] If this Court determines that a term of imprisonment must be imposed, defendant requests that he be sentenced to a year and a day in the Bureau of Prisons.

3:21-cr-00374-MMC
Defendant's Sentencing Mem.                    15